[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11455
_____

D.C. Docket No. 1:08-cv-00030-LGW-BKE

ROBERT BROWN,
on behalf of himself and all others similarly situated,
MICHAEL VOGLER,
on behalf of himself and all others similarly situated,

Plaintiffs-Appellees,

versus

ELECTROLUX HOME PRODUCTS, INC.,
d.b.a. Frigidaire,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(March 21, 2016)

Before WILSON and WILLIAM PRYOR, Circuit Judges, and BUCKLEW,[*] District Judge.

--------

[*] Honorable Susan C. Bucklew, United States District Judge for the Middle District of Florida, sitting by designation.

WILLIAM PRYOR, Circuit Judge:

This interlocutory appeal involves a class action over smelly washing machines. Across the country, consumers have filed class actions against the manufacturers of front-loading washing machines. *See, e.g.*, *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012). Front-loaders are considered an improvement over traditional top-loading machines because they use less water and energy. But the initial models have a problem: the rubber seal on the front door of the machine retains water, which allows mildew to grow. The mildew then stains clothes and creates a foul odor. In this case, consumers from California and Texas filed a class action against Electrolux Home Products, the manufacturer of Frigidaire front-loading washing machines. After the district court certified two statewide classes, *see Terrill v. Electrolux Home Prods., Inc.*, 295 F.R.D. 671 (S.D. Ga. 2013), Electrolux filed this interlocutory appeal. We now vacate the class certification. Although several of Electrolux's arguments fail, we agree with Electrolux that the district court abused its discretion in determining the predominance requirement of Federal Rule of Civil Procedure 23(b)(3). For that reason, we vacate its order and remand for further proceedings.

2

## I. BACKGROUND

Electrolux Home Products, a Delaware corporation headquartered in Georgia, manufacturers front-loading washing machines under the Frigidaire brand. Front-loaders are the next stage in the evolution of the washing machine. While traditional top-loading machines completely fill up with water and spin the clothes around with an agitator, front-loading machines only partially fill up and tumble the clothes in and out of the water. This process saves both water and energy.

To prevent water from leaking, front-loaders come with a rubber seal known as a "bellow." Frigidaire machines initially came with a convoluted bellow, which is not as smooth as the S-shaped bellow that is now available. The plaintiffs allege that convoluted bellows are defective because they trap water, which allows mildew to grow in the washing machine. But Electrolux contends that owners can easily avoid the mildew problem by wiping down the machine and leaving the door open after use.

Robert Brown, a Californian, and Michael Vogler, a Texan, purchased Frigidaire front-loading washing machines with convoluted bellows. Vogler saw a poster from Frigidaire in the department store where he bought his machine. But Brown never saw any advertisements from Frigidaire. Both consumers discovered mildew in their machines. All Frigidaire front-loading washing machines come

3

with a full one-year warranty. The warranty includes several exceptions, including damage caused by "misuse."

After Michael Terrill, a consumer from Wisconsin, filed a putative class action against Electrolux in the district court and amended the complaint to add Brown, Vogler, Palecia Boyd, and Denise Pack as named plaintiffs, the district court dismissed all of the named plaintiffs except Brown and Vogler. The amended complaint alleges two types of claims: warranty claims and consumer claims. The warranty claims include breach of express warranty under California law, breach of the implied warranty of merchantability under California and Texas law, and violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310. The claims under the Magnuson-Moss Act are identical to the other warranty claims because they are also based on state law. *See Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir. 1986). The consumer claims include violations of the California Unfair Competition Law and violations of the Texas Deceptive Trade Practices– Consumer Protection Act. The consumer claims stem from Electrolux's failure to disclose the defective nature of the convoluted bellow in its advertisements and marketing materials. For example, the Frigidaire website boasted that its front-loading washing machines would "keep your clothes looking their best" without mentioning the defective bellow or the mildew problem. The amended complaint seeks damages in the form of a refund of the purchase price or the difference in the

4

resale value of the washing machines, as well as any injuries caused by the mildew, including soiled laundry.

Brown and Vogler moved for class certification, which the district court granted. The district court certified the following two statewide classes:

> California Class: All persons and entities who purchased, other than for resale, after March 5, 2004, and while in the State of California, a Frigidaire front-loading washing machine with a convoluted bellow.
>
> Texas Class: All persons and entities who purchased, other than for resale, after March 5, 2004, and while in the State of Texas, a Frigidaire front-loading washing machine with a convoluted bellow.

Brown represents the California class for the claims under California law, and Vogler represents the Texas class for the claims under Texas law.

The district court recognized that it must conduct a "rigorous analysis" to determine whether a class action satisfies Rule 23. *Terrill*, 295 F.R.D. at 682 (quoting *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009)). And it explained that "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)). But the district court also stated that it "resolves doubts related to class certification in favor of certifying the class," *id.* at 683, and that it "accepts the allegations in the complaint as true," *id.* at 682 (quoting *Mazur v. eBay Inc.*, 257 F.R.D. 563, 566 (N.D. Cal. 2009)), and "draws

5

all inferences and presents all evidence in the light most favorable to" the party

seeking class certification, *id.* at 680.

The district court concluded that "the questions of law or fact common to

class members predominate over any questions affecting only individual

members," Fed. R. Civ. P. 23(b)(3). With respect to the consumer claims, the

district court concluded that every element was susceptible to classwide proof.

Electrolux argued that causation would require individual proof because the class

members must prove that they did not already know about the mildew problem,

which was well-publicized at the time, when they purchased their front-loading

washing machines. But the district court concluded that "each class member

presumably relied on the fact that Defendant provided Washing Machines suited

for cleaning and freshening clothing." *Terrill*, 295 F.R.D. at 696. The district court

explained that the class members "can show their reliance on Defendant's failure

to disclose the Washing Machines' alleged design defect and the inevitable

consequences of that defect through classwide proof that they purchased Machines

to clean and freshen their clothes rather than to soil and odorize them." *Id.* As for

the warranty claims, the district court concluded that most of the elements were

susceptible to classwide proof. It rejected Electrolux's argument that the questions

whether the class members gave Electrolux pre-suit notice of the defect, whether

the class members gave Electrolux an opportunity to cure the defect, and whether

6

the defect manifested during the warranty period would require individual proof. The district court speculated that Brown and Vogler might not need to prove pre-suit notice, an opportunity to cure, or manifestation of the defect under California or Texas law: pre-suit notice and an opportunity to cure might not be required when the defendant had "prior knowledge of the design defect," *id.* at 689, 692, and manifestation of the defect might not be required "when a latent defect existed during the warranty period but was discovered after the warranty period," *id.* at 691. But the district court never answered these preliminary questions of state law. Instead, it concluded that the questions whether pre-suit notice, an opportunity to cure, and manifestation of the defect are required under California and Texas law are "common questions" that weigh in favor of class certification. *Id.* at 689–92.

The district court also rejected several other challenges to predominance. For example, Electrolux argued that the individual nature of the plaintiffs' damages defeats predominance for every claim. The district court disagreed because the "many . . . common issues" of liability outweigh the individual issues of damages. *Id.* at 697. It cited the general rule that "the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Id.* (quoting *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003)). Electrolux also argued that misuse—one of its affirmative defenses to the warranty claims—defeats predominance. It argued that this defense would require

7

the plaintiffs to prove, for each class member, that the mildew in their washing machine was not caused by their own misuse—for example, leaving damp clothes in the washer for too long, failing to perform routine maintenance, or installing the machine in a damp area. The district court rejected this argument because misuse has "classwide application" and "goes to the common issue of causation." *Id.* The district court also cited the general rule that "unique affirmative defenses rarely predominate where a common claim is established." *Id.* at 696.

After the district court certified the California and Texas classes, Electrolux filed a petition for permission to take an interlocutory appeal, Fed. R. Civ. P. 23(f). We granted its petition. Brown and Vogler have asked us to dismiss the petition as improvidently granted, but we decline.

## II. STANDARD OF REVIEW

We review a class certification for abuse of discretion. *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, 762 F.3d 1248, 1253 (11th Cir. 2014). But abuse of discretion is a "continuum," Henry J. Friendly, *Indiscretion About Discretion*, 31 Emory L.J. 747, 756 (1982), and in the context of class actions, review for abuse of discretion often "does not differ greatly from review for error," *Abrams v. Interco Inc.*, 719 F.2d 23, 28 (2d Cir. 1983) (Friendly, J.). "[W]ith great power comes great responsibility; the awesome power of a district court [to certify a class action] must be 'exercised within the framework of

8

rule 23.'" *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004) (quoting

*Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996)), *abrogated in part*

*on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

### III. DISCUSSION

Electrolux challenges the class certification on two primary grounds: it

contends that the district court articulated the wrong standard for class certification

and that Brown and Vogler cannot satisfy the predominance requirement of Rule

23(b)(3). We address each argument in turn.

*A.  The District Court Misstated the Standard for Class Certification.*

Electrolux contends that the district court made two misstatements of law

when it articulated the standard for class certification. First, the district court erred

by stating that it "resolves doubts related to class certification in favor of certifying

the class." *Terrill*, 295 F.R.D. at 683. Second, the district court erred by stating that

it "accepts the allegations in the complaint as true," *id.* at 682 (quoting *Mazur*, 257

F.R.D. at 566), and "draws all inferences and presents all evidence in the light

most favorable to" the party seeking class certification, *id.* at 680. Brown and

Vogler concede that these statements were erroneous.

The parties are correct that the district court misstated the law when it said

that it "resolves doubts related to class certification in favor of certifying the

class." *Id.* at 683. The party *seeking* class certification has the burden of proof.

9

*Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003). And the entire point of a burden of proof is that, if doubts remain about whether the standard is satisfied, "the party with the burden of proof loses." *Simmons v. Blodgett*, 110 F.3d 39, 42 (9th Cir. 1997). All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *Hansberry v. Lee*, 311 U.S. 32, 40–41 (1940). A district court that has doubts about whether "the requirements of Rule 23 have been met should refuse certification until they have been met." Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment; *accord In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 321 (3d Cir. 2008); *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1218 (10th Cir. 2013).

The district court also misstated the law when it said that it "accepts the allegations in the complaint as true," *Terrill*, 295 F.R.D. at 682 (quoting *Mazur*, 257 F.R.D. at 566), and "draws all inferences and presents all evidence in the light most favorable to Plaintiffs," *id.* at 680. The party seeking class certification has a burden of *proof*, not a burden of pleading. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2412 (2014). He "'must affirmatively demonstrate his compliance' with Rule 23" by proving that the requirements are "*in fact*" satisfied. *Comcast*, 133 S. Ct. at 1432 (quoting *Wal-Mart*, 131 S. Ct. at 2551). And the

10

district court must conduct a "rigorous analysis" to determine whether the movant carried his burden, which "will frequently entail 'overlap with the merits of the plaintiff's underlying claim.'" *Id.* (quoting *Wal-Mart*, 131 S. Ct. at 2551). Of course, the district court can consider the merits "only" to the extent "they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013). But if a question of fact or law *is* relevant to that determination, then the district court has a duty to actually decide it and not accept it as true or construe it in anyone's favor. *See Comcast*, 133 S. Ct. at 1432–33; *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675–76 (7th Cir. 2001); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365–66 (4th Cir. 2004). The district court erred when it stated the opposite.

Brown and Vogler argue that these misstatements by the district court are harmless because they played no role in its actual analysis, but the harmfulness of an error does not matter when we are going to remand anyway. *See United States v. Molina-Guevara*, 96 F.3d 698, 705 (3d Cir. 1996). And here, we must vacate the class certification because the district court abused its discretion in assessing predominance, as we will explain below. On remand, we are confident that the district court will apply the correct standard for class certification.

11

*B. The District Court Abused Its Discretion in Assessing Predominance.*

Electrolux contends that the district court abused its discretion when it decided that "the questions of law or fact common to class members predominate over any questions affecting only individual members," Fed. R. Civ. P. 23(b)(3). To determine whether the requirement of predominance is satisfied, a district court must first identify the parties' claims and defenses and their elements. *See Klay*, 382 F.3d at 1254 & n.7. The district court should then classify these issues as common questions or individual questions by predicting how the parties will prove them at trial. *See id.* at 1255. Common questions are ones where "the same evidence will suffice for each member," and individual questions are ones where the evidence will "var[y] from member to member." *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005).

After identifying the common and individual questions, the district court should determine whether the common questions predominate over the individual ones. We have adopted the following rule of thumb:

> [I]f common issues truly predominate over individualized issues in a lawsuit, then the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered. . . . If, on the other hand, the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate.

12

*Vega*, 564 F.3d at 1270 (first and second alterations in original) (quoting *Klay*, 382 F.3d at 1255). "But predominance requires a qualitative assessment too; it is not bean counting," and the "relative importance" of the common versus individual questions also matters. *Butler*, 727 F.3d at 801; *see also Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000) (explaining that predominance "can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action"). District courts should assess predominance with its overarching purpose in mind—namely, ensuring that "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (alteration in original) (quoting Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment).

Electrolux makes four arguments about predominance. First, it contends that the plaintiffs cannot prove causation—an element of their consumer claims—on a classwide basis. Second, Electrolux argues that the district court was wrong to conclude that predominance is satisfied for the warranty claims without first answering several preliminary questions of state law. Third, Electrolux contends that the plaintiffs cannot prove damages on a classwide basis for any of their claims. Finally, Electrolux contends that misuse—one of its defenses to the

13

plaintiffs' warranty claims—will require individual proof. We agree with Electrolux's first two arguments, which require us to vacate the class certification and remand to the district court, and on remand, the district court should revisit Electrolux's last two arguments.

1.  The Consumer Claims Do Not Satisfy Predominance Because the Plaintiffs Cannot Prove Causation on a Classwide Basis.

Electrolux argues that the district court misapplied California and Texas law when it concluded that the plaintiffs could prove causation on a classwide basis. Electrolux argues that causation requires individual proof. We agree and will discuss California law first and Texas law second.

a.  California Law

The California Unfair Competition Law prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. A plaintiff cannot recover damages for violations of the statute; he can obtain only an injunction or "restitution." *In re Tobacco II Cases*, 207 P.3d 20, 29 (Cal. 2009). Restitution means "any money or property, real or personal, which may have been acquired by means of [the defendant's] unfair competition." Cal. Bus. & Prof. Code § 17203. The "by means of" requirement for restitution is "less stringent" than but-for causation, *Tobacco II*, 207 P.3d at 3, but "one who was not exposed to the alleged misrepresentations and therefore could not possibly have lost money or property as a result of the unfair

14

competition is not entitled to restitution," *Pfizer Inc. v. Superior Court*, 105 Cal. Rptr. 3d 795, 803 (Cal. Ct. App. 2010); *accord Am. Honda Motor Co. v. Superior Court*, 132 Cal. Rptr. 3d 91, 101 (Cal. Ct. App. 2011); *Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 100 Cal. Rptr. 3d 637, 652 (Cal. Ct. App. 2009).

Brown argues that the California class is entitled to restitution because Electrolux engaged in both "unfair" and "fraudulent" business practices when it failed to mention the defective bellow or mildew problem in its advertisements. Electrolux responds that Brown cannot prove, on a classwide basis, that Electrolux acquired the class members' money "by means of" its omissions, Cal. Bus. & Prof. Code § 17203. The district court rejected Electrolux's argument because it concluded that the class members were exposed to uniform business practices.

The district court misunderstood the plaintiffs' complaint. Brown alleges that Electrolux engaged in unfair competition by omitting essential information in its *advertisements*. The only advertisements that Brown has identified are on Frigidaire's website, but he has made no effort to prove that any member of the California Class visited the website before purchasing his washing machine. Brown instead admitted that *he* never saw any advertisements from Frigidaire. Because the class members were not exposed to a uniform misrepresentation, the claim under the California Unfair Competition Law is unsuitable for class treatment. *See Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880,

15

883 (5th Cir. 1973); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595 (9th Cir. 2012).

We reject Brown's argument that Electrolux never challenged the certification of his claim of "unfair" business practices, as opposed to his claim of "fraudulent" business practices, in the district court. In its opposition to the motion for class certification, Electrolux challenged the certification of *all* claims under the California Unfair Competition Law. And its challenge went to the requirements for restitution, which apply equally to claims of unfair business practices and fraudulent business practices alike. Even if Electrolux did not articulate its arguments with the utmost precision, it did not forfeit anything because "the burden to prove whether class certification is appropriate rests on the plaintiffs" and the district court "has the responsibility of conducting its own inquiry as to whether the requirement of Rule 23 have been satisfied." *Valley Drug*, 350 F.3d at 1188–89 & n.16.

b.  Texas Law

The Texas Deceptive Trade Practices–Consumer Protection Act prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus. & Com. Code Ann. § 17.46(a). To recover under the Act, a plaintiff must prove that he "relied on" the defendant's conduct to his detriment. *Id.* § 17.50(a)(1)(B). This reliance element requires that the plaintiff "*actually did*

16

rely" on the defendant's statement or omission, not that the defendant "*wanted* purchasers to rely on its advertisements and other representations." *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 694 (Tex. 2002).

Electrolux contends that the reliance element defeats predominance because it requires individual proof. Texas adopted its class-action rule based on federal Rule 23, *Sw. Ref. Co. v. Bernal*, 22 S.W.3d 425, 433 (Tex. 2000), and Electrolux explains that no Texas court has *ever* certified a class action under the Texas Deceptive Trade Practices–Consumer Protection Act, *see Tex. S. Rentals, Inc. v. Gomez*, 267 S.W.3d 228, 237 (Tex. App. 2008). That a plaintiff could prove reliance on a classwide basis is "a near-impossibility," according to the Texas Court of Appeals. *Id.* (quoting *Fid. & Guar. Life Ins. Co. v. Pina*, 165 S.W.3d 416, 423 (Tex. App. 2005)).

The district court certified a class because it concluded based on *Southwestern Bell Telephone Co. v. Marketing on Hold Inc.*, 308 S.W.3d 909 (Tex. 2010), that the plaintiffs could prove reliance on a classwide basis. The district court erred.

*Southwestern Bell* is inapposite. There, a class of consumers sued a phone company for overcharging them on their bills. *Id.* at 914. The Texas Supreme Court held that the consumers could prove reliance on a classwide basis because the inflated price on their bills was a uniform misrepresentation by the phone

17

company, and the class members all relied on that misrepresentation when they paid their bills without objection. *Id.* at 922–23. Here, by contrast, we cannot presume that the class members relied on any uniform misrepresentation. As explained above, we have no inkling whether the class members saw *any* advertisements from Frigidaire, much less uniform advertisements, before they purchased their washing machines. Unlike in *Southwestern Bell*, the Texas class will need to prove reliance on an individual basis. This necessity means that their claim under the Texas Deceptive Trade Practices–Consumer Protection Act cannot proceed as a class action. *See Wal-Mart*, 131 S. Ct. at 2552 n.6; *Sandwich Chef of Tex,, Inc. v. Reliance Nat. Indem. Ins. Co.*, 319 F.3d 205, 219 (5th Cir. 2003); *In re Clorox Consumer Litig.*, 301 F.R.D. 436, 446 (N.D. Cal. 2014).

The district court abused its discretion when it certified the consumer claims. These claims do not satisfy predominance because their elements of causation require individual proof. In concluding otherwise, the district court misapplied California and Texas law.

2.  The District Court Abused Its Discretion by Certifying the Warranty Claims Without First Resolving Preliminary Questions of State Law that Bear on Predominance.

Electrolux next argues that the district court prematurely certified the warranty claims because it did not first resolve several questions of state law that were relevant to predominance. That is, the district court could not determine

18

predominance without first deciding whether California and Texas law require pre-suit notice, an opportunity to cure, and manifestation of the defect. We agree.

A district court must decide all questions of fact and law that "b[ear] on the propriety of class certification." *Comcast*, 133 S. Ct. at 1432. For example, a question of state law bears on predominance if, answered one way, an element or defense will require individual proof but, answered another way, the element or defense can be proved on a classwide basis. It does not matter whether the question also pertains to the merits; if a question of law bears on a requirement of Rule 23, then the district court must answer it. *See Vega*, 564 F.3d at 1266. "[B]ecause each requirement of Rule 23 must be met, a district court errs as a matter of law when it fails to resolve a genuine legal or factual dispute relevant to determining the requirements." *Hydrogen Peroxide*, 552 F.3d at 320.

The questions of state law that Electrolux asked the district court to resolve—whether the plaintiffs must prove pre-suit notice, an opportunity to cure, and manifestation of the defect—bear on predominance. If California and Texas law do not excuse pre-suit notice and an opportunity to cure when the defendant had "prior knowledge of the design defect," as the district court speculated, *Terrill*, 295 F.R.D. at 689, 692, then each class member will need to prove that he gave Electrolux pre-suit notice and an opportunity to cure. This showing could require individual proof. *See Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 642

19

(S.D. Fla. 2008). And if California and Texas law require the defect to manifest, then each class member will need to prove that his washing machine actually grew mildew during the warranty period. This showing could also require individual proof. *See Gen. Motors Corp. v. Garza*, 179 S.W.3d 76, 82–84 (Tex. App. 2005). Because the answers to these preliminary questions of California and Texas law could affect whether Rule 23(b)(3) is satisfied, the district court had a duty to resolve them. *See Cole v. Gen. Motors Corp.*, 484 F.3d 717, 727–30 (5th Cir. 2007).

The district court erred when it classified these preliminary questions as "common questions" that weigh in favor of class certification. *Terrill*, 295 F.R.D. at 689–92. "[A]ny competently crafted class complaint literally raises common 'questions.' . . . What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 131 S. Ct. at 2551 (third alteration in original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131–32 (2009)). A question is common when "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Answering the questions whether California and Texas law require pre-suit notice, an opportunity to cure, and manifestation of the defect would not

20

resolve issues that are "central to the validity" of the plaintiffs' warranty claims. *Id.* Answering them would instead help the district court determine what the law *is* in California and Texas, which in turn would help it identify the overall mix of individual versus common questions for purposes of predominance. Because the district court punted these questions instead of answering them, it abused its discretion.

We remand to the district court so it can answer these questions of state law in the first instance. We express no view on what the answers are, and we express no view on whether the answers, if unfavorable to the plaintiffs, will defeat predominance and prevent class certification. The latter determination "is committed in the first instance to the discretion of the district court." *Califano v. Yamasaki*, 442 U.S. 682, 703 (1979).

3.  The Plaintiffs' Damages Do Not Necessarily Defeat Predominance.

Electrolux argues that none of the plaintiffs' claims satisfies predominance because their damages will require individual proof. The district court rejected this argument because it concluded that the common questions of liability outweighed the individual questions of damages. Electrolux contends that this analysis conflicts with the recent decision of the Supreme Court in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426.

21

We disagree with Electrolux's argument. *Comcast* did not change the law about the effect of individual damages on predominance. Nevertheless, under existing law, the individual nature of the plaintiffs' damages is still relevant to whether predominance is satisfied.

As the district court correctly explained, "the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Allapattah Servs.*, 333 F.3d at 1261. The "black letter rule" recognized in every circuit is that "individual damage calculations generally do not defeat a finding that common issues predominate." William B. Rubenstein, Newberg on Class Actions § 4:54 (5th ed.). Although damages often raise numerous "individual" questions, predominance is "a qualitative rather than a quantitative concept. It is not determined simply by counting noses: that is, determining whether there are more common issues or more individual issues, regardless of relative importance." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014). And, relatively speaking, individual issues of damages are sometimes easy to resolve because the calculations are formulaic. *See Klay*, 382 F.3d at 1259–60. District courts have many tools to decide individual damages: "(1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and

22

providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001) (footnote omitted), *abrogated in part on other grounds by In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006).

Contrary to Electrolux's argument, *Comcast* did not alter the black-letter rule that individual damages do not always defeat predominance. The issue in *Comcast* was whether the plaintiffs could use an expert model to prove their damages on a classwide basis, even though the model did not match their theory of liability. *See Comcast*, 133 S. Ct. at 1431. The Supreme Court held that they could not and, for that reason, the class action did not satisfy predominance. *See id.* at 1432–35. But the Supreme Court did not hold that individual damages necessarily defeat predominance or that a plaintiff seeking class certification must present an expert damages model. The Court *assumed* those points because the parties had conceded them. *See id.* at 1430 ("The District Court held, and *it is uncontested here*, that to meet the predominance requirement respondents had to show . . . that the damages . . . were measurable 'on a class-wide basis' through use of a 'common methodology.'" (emphasis added) (quoting *Behrend v. Comcast Corp.*, 264 F.R.D. 150, 154 (E.D. Pa. 2010)). Such assumptions are not holdings, *see Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993), and they do not overrule our

23

precedents. Indeed, the *Comcast* Court confirmed that its decision did not break new ground but instead "turn[ed] on the straightforward application of class-certification principles." *Comcast*, 133 S. Ct. at 1433. And other courts agree that *Comcast* did not change the law that a class action can sometimes be maintained notwithstanding the need to prove individual damages. *See, e.g.*, *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 408 (2d Cir. 2015); *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 374–75 & n.10 (3d Cir. 2015); *In re Deepwater Horizon*, 739 F.3d 790, 815 (5th Cir. 2014); *Butler*, 727 F.3d at 800–01. *But cf. In re Rail Freight Fuel Surcharge Antitrust Litig.–MDL No. 1869*, 725 F.3d 244, 255 (D.C. Cir. 2013).

The black-letter rule has always been subject to exceptions. For example, individual damages defeat predominance if computing them "will be so complex, fact-specific, and difficult that the burden on the court system would be simply intolerable." *Klay*, 382 F.3d at 1260. Furthermore, individual damages defeat predominance when they are accompanied by "significant individualized questions going to liability." *Id.* (citing *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1366 (11th Cir. 2002), *abrogated in part on other grounds by Bridge*, 553 U.S. 639; *Rutstein*, 211 F.3d at 1234, 1240).

We leave it to the district court on remand to decide whether the latter exception is satisfied here. The district court concluded that the individual

24

questions of damages in this case were outweighed by numerous questions of liability that are common to the class. But, as explained above, the district court could not be sure that many of those questions of liability—namely, pre-suit notice, an opportunity to cure, and manifestation of the defect—are common to the class because it did not first resolve several preliminary questions of state law. On remand, the district court must resolve those preliminary questions and reconsider the issue of predominance. We express no view on this issue and leave it to the discretion of the district court, where it belongs.

4. Electrolux's Defense of Misuse Does Not Necessarily Defeat Predominance.

Electrolux contends that the warranty claims do not satisfy predominance because causation will require individual proof. Electrolux does not raise any specific concerns about causation, except for its affirmative defense of misuse. Electrolux argues that the plaintiffs will need to prove that the convoluted bellows, as opposed to misuse by the owners, caused the mildew to grow in their washing machines. The district court rejected this argument because it concluded that Electrolux's defense has "classwide application." *Terrill*, 295 F.R.D. at 697. The district court also concluded that even if misuse would require individual proof, "unique affirmative defenses rarely predominate where a common claim is established." *Id.* at 696.

25

We disagree that misuse can be proved classwide, but we agree that individual affirmative defenses generally do not defeat predominance. Nevertheless, like damages, the individual nature of the affirmative defenses is still relevant to whether predominance is satisfied.

The district court erred when it stated that Electrolux's defense of misuse was a common question. Although Electrolux raised this defense against every class member, the applicability of a defense does not make it a "common" question. *See Wal-Mart*, 131 S. Ct. at 2551. What matters is the type of evidence that the parties will submit to prove and disprove the defense. Here, the class members will need to prove that the mildew in their washing machines did not arise from their own misuse. That showing will require individual proof. *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 604 (3d Cir. 2012); *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 595 (C.D. Cal. 2008).

The district court was nevertheless correct when it stated that individual affirmative defenses ordinarily do not defeat predominance. "The general rule, regularly repeated by courts in many circuits, is that '[c]ourts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members.'" Newberg on Class Actions § 4:55 (alteration in original) (quoting *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003)). Like damages, affirmative defenses are

26

often easy to resolve, *see, e.g.*, *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 297 (1st Cir. 2000), and district courts have several tools available to manage them, *see Smilow*, 323 F.3d at 39–40.

But like damages, affirmative defenses are still relevant to the question of predominance. *See Waste Mgmt. Holdings*, 208 F.3d at 295. Individual affirmative defenses can defeat predominance in some circumstances. For example, the affirmative defenses could apply to the vast majority of class members and raise complex, individual questions. *See, e.g.*, *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1177–83 (11th Cir. 2010). Or the affirmative defenses could be coupled with several other individual questions. *See Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 147 n.25 (3d Cir. 1998).

We again leave these questions to the district court on remand. As explained, the district court too hastily concluded that several questions in this litigation were common to the class. On remand, the district court must reconsider these questions. We express no view about them and leave them, like all questions of class certification, to the discretion of the district court.

## IV. CONCLUSION

We **VACATE** the class certification and **REMAND** for further proceedings consistent with this opinion.

27