319 Ga. 649
FINAL COPY

S23G1224. VEST MONROE, LLC et al. v. DOE.

BETHEL, Justice.

When faced with resolving the question of whether class certification is appropriate, a trial court enjoys broad discretion. See *Carnett's, Inc. v. Hammond*, 279 Ga. 125, 127 (3) (610 SE2d 529) (2005). OCGA § 9-11-23 guides the court's exercise of that discretion and sets forth the requirements a plaintiff must meet in order to represent a class. Among other requirements, a plaintiff must show that "[t]here are questions of law or fact common to the class" and that his own claims are "typical of the claims . . . of the class," otherwise known as the commonality and typicality requirements. See OCGA § 9-11-23 (a) (2), (3). In accordance with the broad discretion afforded the trial court in deciding whether a plaintiff has met the statutory requirements, an appellate court's scope of review is limited to assessing whether the trial court abused its discretion. See *State Farm Mut. Auto. Ins. Co. v. Mabry*, 274 Ga. 498, 499-500

(1) (556 SE2d 114) (2001). In this case, we are tasked with assessing whether the Court of Appeals properly applied that deferential standard of review to the trial court's denial of class certification.

John Doe, the named plaintiff in this putative class action, received treatment at Ridgeview Institute — Monroe, a behavioral health and addiction treatment facility. Following the unauthorized disclosure of his and other patients' information by a former Ridgeview employee, Doe sued Ridgeview's owners and operators and its chief executive officer (collectively, "Vest Monroe"), not only seeking to recover monetary damages caused by the unauthorized disclosure of his own patient information, but also proposing to seek relief for a class of other affected patients.[1] The trial court denied Doe's motion for class certification, finding that Doe failed to establish either the required elements of commonality or typicality

---

[1] Doe alleges 11 different claims: breach of express contract, breach of implied contract, unjust enrichment, negligence, negligence per se, negligent misrepresentation, invasion of medical privacy, common law invasion of privacy, breach of confidentiality/confidential relations, wrongful disclosure of privileged information, and violation of Georgia's Uniform Deceptive Trade Practices Act, OCGA § 10-1-370 et seq.

2

under OCGA § 9-11-23 (a). Doe appealed,[2] and the Court of Appeals reversed the trial court's decision, see *Doe v. Vest Monroe*, 368 Ga. App. 572 (890 SE2d 439) (2023), although one member of the panel dissented, see id. at 579-580 (Brown, J., dissenting). We granted certiorari to consider whether the trial court abused its discretion by finding that the putative class lacked commonality and typicality under OCGA § 9-11-23 (a). For the reasons explained below, we conclude that the trial court acted within its discretion in finding a lack of typicality, so we reverse the judgment of the Court of Appeals. And because a lack of either typicality *or* commonality supports the denial of class certification, we do not address commonality.

1. The relevant facts and procedural history of this case are as follows. The unauthorized disclosure of patient information giving rise to this case is attributed to the actions of Rhonda Rithmire, a

---

[2] See OCGA § 9-11-23 (g) ("A court's order certifying a class or refusing to certify a class shall be appealable in the same manner as a final order to the appellate court which would otherwise have jurisdiction over the appeal from a final order in the action.").

former employee at Ridgeview. Rithmire became director of plant operations at Ridgeview in September 2018. As director, Rithmire was responsible for managing and organizing the facility's operations, including housekeeping, maintenance, and groundskeeping. While Rithmire's duties did not involve the direct delivery of healthcare services, aspects of her job required that she have access to certain patient information. But during her employment, Rithmire also allegedly accessed and maintained possession of a significant volume of more sensitive patient information of various sorts that was unrelated to her job duties.

Rithmire was terminated from her employment at Ridgeview in June 2019, and soon after, she contacted plaintiff's counsel of record in a medical malpractice case pending against Ridgeview and later provided the attorney with digital copies of documents she obtained from Ridgeview, as well as paper documents and audio recordings.[3] Rithmire also provided the documents to her personal

---

[3] The attorney shared some of those documents with experts he had retained in his pending case and provided the entirety of the Ridgeview

4

attorney. After becoming aware of the disclosure of the patient information, Ridgeview initiated an investigation and ultimately discovered that information pertaining to nearly 2,000 patients had been compromised.

In March 2020, Vest Monroe, LLC, filed suit against Rithmire in federal court. The district court enjoined Rithmire and her personal counsel from further dissemination of the Ridgeview documents and ordered her to delete the material in her possession. Vest Monroe notified all potentially affected individuals of the incident.

In November 2020, after receiving notice of the incident, Doe filed a class action complaint against Vest Monroe, asserting a number of claims related to the unauthorized disclosure of patient information. Doe moved for class certification in March 2022.[4] After

---

documents to all counsel of record in that case during the course of discovery. The attorney also shared some materials with another plaintiff's attorney in a separate medical malpractice action against Ridgeview. That attorney's actions are not at issue in this appeal.

[4] Doe sought certification of the following class:

All persons who were adult patients of Ridgeview Institute

5

a hearing, the trial court denied the motion, finding that Doe failed to establish the required elements of commonality and typicality.

Specifically, in finding a lack of commonality, the court noted the differences in the type of documents disclosed with respect to members of the proposed class, in that some contained diagnosis and treatment information, while others did not. With respect to Doe, the trial court noted that the information released was contained in discharge summaries and census reports and that no diagnosis or treatment information was revealed. The court considered that Rithmire was authorized to access certain of the information as part of her job duties. But, the trial court reasoned, other information contained in sensitive clinical files raised a qualitatively different issue and implicated different questions about whether Vest Monroe should have permitted Rithmire to have access to those documents

Monroe ("RIM") and whose clinical records containing their protected health information were improperly disclosed to third parties without their consent or authorization in the incident described in the notice posted on RIM's website (titled "A Notice to Our Patients"), attached as Exhibit "A" to Plaintiff's Second Amended Class Complaint.

6

at all, and, relatedly, Vest Monroe's liability, if any, for doing so. Relatedly, and as relevant here, the trial court concluded that Doe's claims lacked typicality because some members of the proposed class had clinical information revealed, while Doe did not.

Doe appealed, and the Court of Appeals reversed. See *Doe*, 368 Ga. App. at 575-579 (2). The Court of Appeals rejected the trial court's finding on commonality and typicality, concluding with respect to typicality specifically that Doe's claims and those of the putative class arose "from the same alleged events" and were "based on the same legal theories" was sufficient to satisfy the typicality requirement. Id. at 579 (2) (b). This appeal followed.

2. Turning first to the question of typicality, we conclude that the trial court did not abuse its discretion by finding a lack of typicality and, thus, that the Court of Appeals erred by concluding otherwise.

It is well settled that class actions represent "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," and, "consistent with [their]

7

exceptional nature," such actions are permitted "only in the limited circumstances described in OCGA § 9-11-23." *Georgia-Pacific Consumer Products v. Ratner*, 295 Ga. 524, 525 (1) (762 SE2d 419) (2014) (citation and punctuation omitted). "The party seeking to represent a class bears the burden of proving that class certification is appropriate" and must meet each of the four requirements of OCGA § 9-11-23 (a) — numerosity,[5] commonality,[6] typicality,[7] and adequacy of representation[8] — in addition to one of several requirements under OCGA § 9-11-23 (b). Id. To meet this burden, the plaintiff must "come forward with evidence to prove [his] satisfaction of the statutory requirements." Id. at 526 (1). See also *Brown v. Electrolux Home Products*, 817 F3d 1225, 1233-1234 (III) (A) (11th Cir. 2016) ("[T]he entire point of a burden of proof is that, if doubts remain about whether the standard is satisfied, the party

---

[5] OCGA § 9-11-23 (a) (1) ("The class is so numerous that joinder of all members is impracticable.").

[6] OCGA § 9-11-23 (a) (2) ("There are questions of law or fact common to the class.").

[7] OCGA § 9-11-23 (a) (3) ("The claims . . . of the representatives are typical of the claims . . . of the class[.]").

[8] OCGA § 9-11-23 (a) (4) ("The representative parties will fairly and adequately protect the interests of the class.").

8

with the burden of proof loses. All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation. The party seeking class certification has a burden of *proof*, not a burden of pleading." (cleaned up; emphasis in original)).[9]

Whether the plaintiff has met his burden of proof is a question committed to the trial court's "broad discretion," though the exercise of that discretion is not unfettered and must comport with the requirements of OCGA § 9-11-23. *Carnett's, Inc.*, 279 Ga. at 127 (3). See also *Ratner*, 295 Ga. at 526 (1). As we have explained before, a trial court may certify a class only if, "after a rigorous analysis," the court determines "that the statutory requirements have been satisfied." *Bowden v. Med. Center*, 309 Ga. 188, 192-193 (1) (a) (845 SE2d 555) (2020) (citations and punctuation omitted).

This rigorous analysis of the statutory requirements will

---

[9] "As we have previously noted, many provisions of OCGA § 9-11-23 were borrowed from Federal Rule of Civil Procedure 23, and for this reason, when Georgia courts interpret and apply OCGA § 9-11-23, they commonly look to decisions of the federal courts interpreting and applying Rule 23." *Bickerstaff v. SunTrust Bank*, 299 Ga. 459, 462 (1) (788 SE2d 787) (2016) (citation and punctuation omitted).

9

frequently "entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."

Id. at 193 (1) (a) (quoting *Wal-Mart Stores v. Dukes*, 564 U. S. 338, 351 (II) (A) (131 SCt 2541, 180 LE2d 374) (2011)). See also *Trevizo v. Adams*, 455 F3d 1155, 1163 (II) (B) (2) (10th Cir. 2006) ("Whether a case should be allowed to proceed as a class action involves intensely practical considerations, most of which are purely factual or fact-intensive. Each case must be decided on its own facts, on the basis of practicalities and prudential considerations." (citation and punctuation omitted)).

On appeal from the grant or denial of class certification, an appellate court reviews the trial court's decision for an abuse of discretion. See *State Farm Mut. Auto. Ins. Co.*, 274 Ga. at 499-500 (1) ("On appellate review of a trial court's decision on a motion to certify a class, the discretion of the trial judge in certifying or refusing to certify a class action is to be respected in all cases where not abused." (citation and punctuation omitted)). And review for

abuse of discretion generally means that a trial court's conclusions "will be affirmed so long as they are in conformity with the governing legal principles, based on correct facts that are relevant to determining whether any legal requirements are satisfied, and within the range of possible outcomes in which there could be room for reasonable and experienced minds to differ." *Premier Pediatric Providers v. Kennesaw Pediatrics*, 318 Ga. 350, 354-355 (2) (898 SE2d 481) (2024) (citations and punctuation omitted). "A trial court abuses its discretion when the exercise of discretion was infected by a significant legal error or a clear error as to a material factual finding." *Rockdale Hosp. v. Evans*, 306 Ga. 847, 851 (2) (b) (834 SE2d 77) (2019). See also *State v. Porter*, 288 Ga. 524, 526 (2) (a) (705 SE2d 636) (2011) (when reviewing for abuse of discretion, "where the trial court has clearly erred in some of its findings of fact and/or has misapplied the law to some degree, the deference owed the trial court's ultimate ruling is diminished" (citation and punctuation omitted)). Critically, the fact that an appellate court may have reached a different conclusion in deciding whether to certify a class,

had the question been put to that court in the first instance, "is of no consequence. Abuse of discretion review allows for a range of choice for the [court], so long as that choice does not constitute a clear error of judgment." *Hines v. Widnall*, 334 F3d 1253, 1257 (11th Cir. 2003) (per curiam) (citation and punctuation omitted). Applying that standard here, we see no basis for concluding that the trial court abused its discretion in finding that Doe failed to establish the element of typicality.

The trial court's order reflects that, overall, it conducted the rigorous analysis contemplated by OCGA § 9-11-23.[10] To begin with, in its order denying class certification, the trial court recognized the governing legal principles relevant to the typicality requirement, explaining that OCGA § 9-11-23 (a) (3) supplies the applicable standard for typicality, that typicality requires the class representative "possess the same interest and suffer the same injury as the class members," and that the pertinent inquiry is "whether a

---

[10] The trial court's order also reflects that it complied with the statutory requirement to hold an evidentiary hearing on the issue of class certification. See OCGA § 9-11-23 (f) (1).

sufficient nexus exists between the claims of the named representatives and those of the class at large." The trial court also recognized that Doe bears the burden of proof in establishing that class certification is appropriate and must do so by introducing affirmative evidence.

All of this was a correct statement of the applicable law. As the United States Supreme Court has explained, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U. S. 147, 156 (II) (102 SCt 2364, 72 LE2d 740) (1982) (citation and punctuation omitted). In other words, there must be "a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines*, 741 F2d 1332, 1337 (11th Cir. 1984).

> A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. Typicality, however, does not require identical claims or defenses. A factual variation will not

13

render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class.

Id.[11] And, as we have said above, the party seeking to certify the class has the burden of establishing typicality through affirmative evidence. See *Ratner*, 295 Ga. at 525-526 (1).

Second, the trial court did not rely on incorrect facts in determining that typicality was lacking. Pertinent to its assessment of typicality, the trial court found that Rithmire "had access to information that had no relationship to her [job]," including "patient files, many of which contained significant sensitive medical information, including parts (or even the entire) clinical record of a

---

[11] As the Eleventh Circuit has explained,

[i]n many ways, the commonality and typicality requirements of Rule 23 (a) overlap. Both requirements focus on whether a sufficient nexus exists between the legal claims of the named class representatives and those of the individual class members to warrant class certification. Traditionally, commonality refers to the group characteristics of the class as a whole and typicality refers to the individual characteristics of the named plaintiff in relation to the class.

*Prado-Steiman v. Bush*, 221 F3d 1266, 1278-1279 (III) (11th Cir. 2000) (citations omitted). This difference in focus creates a "slightly more exacting screen" with respect to typicality. Newberg and Rubenstein on Class Actions, § 3:31: Overlap with Commonality (2024).

patient." The trial court also found it undisputed that "no diagnosis or treatment information related to Mr. Doe was revealed" and that the information about Doe that was improperly disclosed "was contained entirely on discharge summaries and census reports" and "included his name, room number, patient number, admit date, age, sex, marital status, and treating physician." As to other patients, however, the trial court found significant differences from Doe in that "more significant information was revealed, up to and including peer reviewed medical files and information that was part of a patient's clinical record." Specifically, "527 [patients] had more information revealed than John Doe, 45 [patients] had highly sensitive medical information disclosed, including 17 patients for whom a diagnosis was revealed and 245 for whom a medical procedure was disclosed." Doe makes no argument that the trial court's factual findings are clearly erroneous; rather, Doe argues that these differences identified by the trial court do not defeat typicality and that the trial court misapplied the standard because Doe and the other putative class members were victims of the same

15

conduct — that is, Vest Monroe's "careless privacy practices and inadequate record controls" that resulted in the unauthorized disclosure of protected health information. Accordingly, the question is whether, applying the relevant legal principles to the facts found by the trial court, its determination that typicality was lacking was "within the range of possible outcomes in which there could be room for reasonable and experienced minds to differ." *Premier Pediatric Providers*, 318 Ga. at 355 (2) (citation and punctuation omitted). We conclude that it was.

After applying the relevant legal principles to its factual findings, the trial court concluded that Doe's claims "do not represent the claims of all of the proposed class members because some of [the patients] had clinical information revealed whereas [Doe] has not" which "leads to factual and legal differences between the claims in the case." Though the trial court's reasoning on the typicality issue is truncated, we cannot say that its conclusion falls outside "the range of possible outcomes in which there could be room for reasonable and experienced minds to differ." *Premier Pediatric*

16

*Providers*, 318 Ga. at 355 (2) (citation and punctuation omitted).

As an initial matter, it appears that Rithmire, as part of her job responsibilities, was entitled to access some protected health information, such as discharge summaries or census reports, as was disclosed with respect to Doe. But as to other kinds of protected but more sensitive health information, like peer-reviewed medical files and information that was part of patients' clinical records — information that was *not* disclosed with respect to Doe — the trial court expressly found that access to such information was not related to Rithmire's job duties. And even though all of this protected health information ultimately was disclosed to outside individuals following Rithmire's termination, whether the duty to keep this information confidential was breached — and, if so, how and when that duty was breached — as well as the specific claims arising from any such breach, could reasonably differ among members of the proposed class and Doe depending on the type of information disclosed for any given patient. For example, a claim that Vest Monroe allowed Rithmire to access protected health

17

information contained in sensitive clinical files and, additionally, that it should not have done so could give rise to different theories of liability, require different proof, and be subject to different defenses (among other differences) than a claim that Vest Monroe should have taken additional measures to protect the type of information that only tangentially referenced Doe or other class members and that Rithmire necessarily accessed to fulfill her job duties — that is, housekeeping schedules, discharge calendars, patient census reports, and the like. In other words, the *qualitative* nature of the injury, and the proof thereof, is materially different; it is not simply that some of the class members are *quantitatively* more injured than Doe and thus would be entitled to more damages. And because Doe's injuries are qualitatively different, resolution of his claims would not necessarily resolve the claims of the class members belonging to the other group, thus defeating typicality. See *Truesdell v. Thomas*, 889 F3d 719, 725-726 (III) (C) (11th Cir. 2018) (holding that district court did not abuse its discretion in refusing to certify class because the proposed class representative could not adequately

18

establish that his claims were typical of drivers whose personal information had been accessed by sheriff's office employee where employee's reasons for accessing information could vary for each putative class member); *DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*, 469 Fed. Appx. 762, 765 (II) (11th Cir. 2012) (no abuse of discretion in identifying lack of typicality where "each claim would require the establishment of different facts and would be subject to different defenses"). See also *J. D. v. Azar*, 925 F3d 1291, 1322 (III) (A) (2) (b) (D.C. Cir. 2019) (per curiam) ("[T]o destroy typicality, a distinction must differentiate the claims or defenses of the representatives from those of the class." (citation, punctuation and emphasis omitted)); *Marcus v. BMW of North America*, 687 F3d 583, 598 (IV) (C) (3d Cir. 2012) ("Typicality, however, derives its independent legal significance from its ability to screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." (citation and punctuation omitted)).

In reviewing the trial court's findings with respect to typicality, the question before the Court of Appeals was whether the trial court's analysis as to typicality fell "within the range of possible outcomes" permissible on abuse-of-discretion review "in which there could be room for reasonable and experienced minds to differ." *Premier Pediatric Providers*, 318 Ga. at 355 (2) (citation and punctuation omitted). And because the trial court's typicality determination was made in conformity with the governing legal principles, was not based on incorrect or irrelevant facts, and was within the reasonable range of possible outcomes, we cannot say that the trial court abused its discretion by finding a lack of typicality and denying Doe's motion for class certification on that basis. See id. at 354-355 (2). Accordingly, the Court of Appeals erred in determining that the trial court wrongly failed to certify the class on the basis of typicality. And because the trial court acted within its discretion in determining that Doe failed to meet one of the threshold requirements of OCGA § 9-11-23 (a), and because Doe's failure to do so was fatal to his request for class certification, we

need not consider the trial court's finding as to commonality. See

*Bowden*, 309 Ga. at 193-194 (1) (b); *Ratner*, 295 Ga. at 527 (1).

Accordingly, the decision of the Court of Appeals is reversed.

*Judgment reversed. All the Justices concur, except Pinson, J., disqualified.*

Decided September 4, 2024.

Certiorari to the Court of Appeals of Georgia — 368 Ga. App. 572.

*Smith Gambrell & Russell, Leah Ward Sears, Edward H. Wasmuth, Jr., Sasha N. Greenberg; Bendin Sumrall & Ladner, David V. Hayes, Kimberly L. Woodland*, for appellants.

*Kelly & Kelly, Roy R. Kelly IV, Caitlin J. Derst; Fried Bonder White, Joseph A. White, Scott L. Bonder*, for appellees.