Branch, Judge.
A three-year-old boy drowned when his uncle drove the car in which the uncle, the boy’s father, and the boy were all riding into a lake at the apartment complex where the father and son lived. The parents of the boy, Allan Ali Allan and Abeer Allan (the Allans), brought this wrongful death and negligence action against their landlord and the owner of the complex, Jefferson Lakeside, L.P. In Case No. A15A0246, the Allans appeal the trial court’s grant of summary judgment to Jefferson Lakeside; in Case No. A15A0247, Jefferson Lakeside cross-appeals the denial of its motion to exclude an expert’s testimony ruling. After the Allans had filed their notice of appeal, however, the trial court dismissed that notice on the ground that they had not timely completed the record. In Case No. A15A0479, we reverse the dismissal of the Allans’ notice of appeal, but we affirm *223 the grant of summary judgment to Jefferson Lakeside in Case No. A15A0246, and we therefore dismiss Case No. A15A0247 as moot.

Case No. A1SA0479

1. The Allans first argue that the trial court abused its discretion when it dismissed their notice of appeal. We agree.
OCGA § 5-6-48 (c) provides that a trial court is authorized to dismiss an appellant’s notice of appeal “where there has been an unreasonable delay in the filing of [a] transcript and it is shown that the delay was inexcusable and was caused by [the appealing] party.” OCGA § 5-6-48 (f) provides, however, that
. . . [a]n appeal shall not be dismissed nor consideration thereof refused because of failure of the court reporter to file the transcript of evidence and proceedings within the time allowed by law or order of court unless it affirmatively appears from the record that the failure was caused by the appellant.
(Emphasis supplied.) Although the time elapsed between the filing of the notice of appeal and the completion of the appellate record gave rise to a presumption of unreasonable delay by the Allans, the evidence does not support a determination that the delay in this case was inexcusable in that it was caused by them. The trial court thus abused its discretion by dismissing the Allans’ notice of appeal.[1]
A trial court’s discretion to dismiss an appeal under OCGA § 5-6-48 “is a legal discretion which is subject to review in the appellate courts.” Young v. Climatrol Southeast Distrib. Corp., 237 Ga. 53, 55 (226 SE2d 737) (1976) (citation omitted). Specifically, and as the Supreme Court of Georgia has held, a trial court “has discretion to dismiss an appeal for failure to timely file a transcript only if 1) the delay in filing was unreasonable; [and] 2) the failure to timely file was inexcusable in that it was caused by some act of the party responsible for filing the transcript.” (Emphasis supplied.) Baker v. Southern R. Co., 260 Ga. 115, 116 (390 SE2d 576) (1990), citing OCGA § 5-6-48 (f); see also Welch v. Welch, 212 Ga. App. 667, 668-669 (442 SE2d 857) (1994) (following Baker); Barmore v. Himebaugh, 205 Ga. App. 381, *224 382 (422 SE2d 255) (1992) (same); Boulden v. Fowler, 202 Ga. App. 237-238 (414 SE2d 263) (1991) (same).
The Allans filed their timely notice of appeal from the trial court’s grant of summary judgment on September 30, 2013. The notice of appeal designated inclusion of the transcript of the oral argument hearing on summary judgment as part of the appellate record. Only four days later, on October 4,2013, counsel for the Allans e-mailed the trial court’s official court reporter, ordered the transcript of the hearing on the summary judgment motion, and inquired as to the cost of preparing that transcript. On October 7, the court reporter informed counsel that the cost of preparation would be “extra” and in addition to the “shared takedown amount” paid at the hearing, but that she needed to “get back to [counsel] with an estimate” of the preparation cost. A few minutes later, counsel repeated to the court reporter that he needed to know what and where to pay, to which the court reporter replied, “I will get back to you and I will begin the transcript as soon as possible.”
Counsel for the Allans averred that in the three weeks following this exchange with the court reporter, and having been promised that the reporter would ££begin the transcript as soon as possible,” counsel made “several inquiries with the Clerk ... regarding the transmittal of the record to the appellate court,” in response to which the clerk first told counsel that the clerk was “waiting for the transcript to be filed before finalizing the Cost Billing Form,” but later said that “the transcript was filed” and then that “the record was complete and that the Cost Billing Form was finalized.” The trial court thus clearly erred when it found that counsel for the Allans “made no further inquiry into the status of the transcript [after October 7, 2013] until Defendant filed the [motion to dismiss the notice of appeal].”[2]
Further, on October 22, 2013, or more than a week before the expiration of 30 days after the filing of the Allans’ notice of appeal, counsel received the Cost Billing Form from the clerk, the total amount of which included a line item charge of $35, designated as “Transcript.” Counsel paid this bill on November 8,2013. Nowhere in the record or the trial court’s order is there any evidence to contradict counsel’s reasonable inference that this line item charge referred to *225 the transcript of the only in-court proceeding in the case, which counsel had tried to obtain from the court reporter for the purpose of filing it with the clerk. Rather, and as counsel testified, “given that the Cost Billing Form indicated that the record was complete,” counsel had “no reason to believe that [he] would have been told that the transcript was filed and billed for a transcript, if in fact the [c]lerk . .. had not received it, as the [trial court] knew how much to bill for the transcript.” Counsel therefore reasonably if erroneously believed that the transcript, the cost of which had been itemized on the bill he paid, had been prepared by the court reporter and filed with the clerk before the preparation of that bill, which counsel promptly paid. Not until July 2014, when Jefferson Lakeside moved to dismiss the notice of appeal, did the Allans learn that no transcript of the hearing had ever been filed with the clerk of the trial court.
This undisputed evidence makes clear that the Allans’ delay in filing the transcript of the oral argument hearing was excusable and not caused by them. See Welch, 212 Ga. App. at 669 (reversing dismissal of a notice of appeal when the record left “ ‘no doubt as to whether the delay in filing the transcript was caused by the appellants but establishes beyond dispute that it was [not] attributable ... to any act or omission on the part of the appellants’ ”), quoting Boulden, 202 Ga. App. at 238 (reversing dismissal of notice of appeal). Accordingly, the trial court abused its discretion when it dismissed the Allans’ notice of appeal.

Case Nos. A15A0246, A15A0247

2. In Case No. A15A0246, the Allans argue that the trial court erred when it granted Jefferson Lakeside summary judgment on the Allans’ negligence claims because genuine issues of material fact remain as to those claims. We disagree.
To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff’s case.
Lau’s Corp. v. Haskins, 261 Ga. 491 (405 SE2d 474) (1991) (emphasis omitted).
*226 Although we view the record in a light most favorable to the Allans, the relevant facts are not in dispute. The Allans moved into an apartment owned by Jefferson Lakeside in January 2010. On May 1, 2010, a sunny day, the decedent’s uncle entered the complex in a car he had rented for more than two weeks. The uncle had driven this same car into and out of the complex on the access road at least twice before. At approximately 12:30 p.m., the uncle was driving out of the complex with his brother (the decedent’s father) in the front seat and the decedent strapped into a car seat in the back seat when the uncle pulled over to the side of the access road in order to obtain a pack of cigarettes from the glove compartment. The access road was two lanes wide. The right side of the access road ended at a curb, with a sidewalk beginning a few feet from that curb. A slope led up from the sidewalk to at least 14 feet from the edge of the road, where it turned downward for at least 36 feet to the edge of a lake.
As the father retrieved the cigarettes, the uncle saw a navigation system in the glove compartment and asked his brother to give it to him. When the father did so, and as the uncle attached the navigation system to the dashboard, the uncle lifted his foot off the brake, pressed the accelerator, saw that the contents of the glove compartment were falling onto the floor, and “found [him] self in the air.” The car struck the curb, went over it, the sidewalk, up 14 feet of slope, and down an additional 36 feet into the lake, where the car briefly floated. The father opened the front passenger door in an attempt to reach his son, at which water rushed into the car, cutting off its engine and electricity. Although the father could not swim, he managed to escape from the water with help from a bystander, but neither the father nor the uncle was able to free the child before the car became almost completely submerged and the child drowned. Although the uncle was not charged with any crime, a Cobb County police sergeant testified that had the incident occurred on a public road, rather than private property, the uncle would have been charged with failure to maintain lane and second-degree vehicular homicide.
In this wrongful death and negligence action filed against Jefferson Lakeside in March 2012, the Allans allege that their son died as a proximate result of Jefferson Lakeside’s negligence in failing to install a guardrail between the access road and the lake. The Allans also assert claims for negligent infliction of emotional distress and loss of consortium, seeking compensatory and punitive damages. The Allans retained expert witness Richard Rice, who averred that Jefferson Lakeside owed the public a duty to install a guardrail between the road and the lake and that its failure to do so violated applicable *227 design standards and was the proximate cause of the child’s death. Jefferson Lakeside moved to exclude Rice’s testimony on the grounds that his methodology was not scientifically valid as required by Daubert v. Merrell Dow Pharmaceuticals, 509 U. S. 579 (113 SCt 2786, 125 LE2d 469) (1993), and that his testimony was therefore irrelevant.[3] The trial court denied Jefferson Lakeside’s motion to exclude Rice’s testimony, but granted its motion for summary judgment.
As Jefferson Lakeside pointed out below, the outcome of this appeal is controlled by longstanding law to the effect that a landowner cannot be liable as a matter of law for injury resulting from a substantially unforeseeable event because the landowner owes no duty to guard against such an event.
Under OCGA § 51-3-1, an owner or occupier of land is liable to invitees “for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.” To state a cause of action for such negligence, a plaintiff must prove “a legally attributable causal connection between the defendant’s conduct and the alleged injury.” Southern Bell Tel. & Tel. Co. v. Dolce, 178 Ga. App. 175, 176 (1) (342 SE2d 497) (1986) (citations and punctuation omitted). “The inquiry is not whether the defendant’s conduct constituted a cause in fact of the injury, but rather whether the causal connection between that conduct and the injury is too remote for the law to countenance a recovery.” Id.
Under Georgia law, “questions of negligence and proximate cause are ordinarily reserved for the jury, but in plain and undisputed cases the court may make a determination as a matter of law.” (Citations and punctuation omitted.) Hercules v. Lewis, 168 Ga. App. 688, 689 (309 SE2d 865) (1983). Specifically,
[a]n event is not regarded as being foreseeable if it is one in the nature of an extraordinary coincidence, or a conjunction of circumstances, or which would not occur save under exceptional circumstances; if it is unusual and unlikely to happen, or if it is a rare event in experience, or if other and contingent experiences preponderate largely in causing the injurious effect.
Standard Oil Co. v. Harris, 120 Ga. App. 768, 774 (5) (172 SE2d 344) *228 (1969) (citations and emphasis omitted). It follows that
[a] prior and remote cause can not be made the basis of an action if such remote cause did nothing more than furnish the condition, or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated, efficient cause of the injury. If no danger existed in the condition except because of the independent cause, such condition was not the proximate cause.
Southern Bell, 178 Ga. App. at 176 (1). In other words,
[o]ne is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what is only remotely and slightly probable.
Feldman v. Whipkey’s Drug Shop, 121 Ga. App. 580, 581 (2) (174 SE2d 474) (1970) (citations omitted); see also Prosser and Keeton on The Law of Torts, 5th ed. 1984, § 44, p. 312 (due to “virtually unanimous agreement” that liability must be limited to cover “only those intervening causes which lie within the scope of the foreseeable risk,” courts hold that a defendant “is not liable for . . . the reckless or unusual driving of vehicles”).
Some of the above restatements of Georgia law come from cases in which, like the appeal before us, a car has ended up in a place improbably far from where it was supposed to remain, with catastrophic results. Feldman involved a plaintiff who was using a telephone booth at the edge of the sidewalk adj acent to the front of the defendant’s drug store when a vehicle jumped the sidewalk and crashed into the booth, seriously injuring the plaintiff. 121 Ga. App. at 580-581. We held that a trial court correctly dismissed the action because the sequence of events consisting of a car suddenly jumping the curb and sidewalk and crushing the plaintiff against the brick wall of the drugstore was not reasonably foreseeable, with the result that the defendant could not have been negligent as a matter of law for failing to install a guardrail between the parking lot and the telephone booth. Id. at 580-581 (1), (2). Likewise, in Eckerd-Walton, Inc. v. Adams, 126 Ga. App. 210 (190 SE2d 490) (1972), the plaintiff was sitting on a counter stool at the defendant’s drug store when a car crashed through the plate glass window fronting the store and pinned her against the counter. Id. at 212 (2). To reach the plaintiff, the car *229 crossed over a five-inch curb, six feet of sidewalk, and a nearly eight-inch high brick foundation wall; went through a plate glass window; and traveled six feet inside the drug store. Id. at 211-212 (2). We held that the trial court should have granted Eckerd’s motion for a directed verdict because the defendant “did nothing which proximately caused the plaintiff to be injured” and could not be held liable for such a “remote and improbable” act that could “not reasonably... be anticipated ... in the exercise of ordinary care.” Id. at 213 (2); see also Sotomayor v. Tama I, LLC, 274 Ga. App. 323, 327-329 (2) (617 SE2d 606) (2005) (physical precedent only) (parents could not recover for death of child killed by a driver who crossed a curb, four feet of sidewalk, and thirteen feet of grass before striking the child because the landowner could not be negligent as a matter of law in failing to foresee such an event); Southern Bell, 178 Ga. App. at 176 (1) (telephone company could not be negligent for failing to construct a physical barrier between a parking lot and telephones because it was not foreseeable that a car would suffer brake failure and hit the plaintiff).
By contrast, when a car may be anticipated to intrude upon a space sufficiently close to a place where invitees are expected to stand or sit, we have held that a jury may consider whether a landowner could be held liable for the outcome of such an event, which was reasonably foreseeable under the circumstances. See Chatmon v. Church’s Fried Chicken, 133 Ga. App. 326, 327-328 (211 SE2d 2) (1974) (when car struck plaintiff from the rear while he was standing in front of an outside ordering window, and had jumped a three-to-four inch curb in a parking lot without car guard stops, “reasonable [minds] might differ as to whether [the] accidental injury should have been anticipated” and protection barriers installed); Church’s Fried Chicken v. Lewis, 150 Ga. App. 154, 155 (1) (256 SE2d 916) (1979) (when employee had directed the plaintiff to use defendant restaurant’s outside window, requiring him to stand on a concrete pad that was 66 inches away from the adjacent parking area, and when the restaurant had failed to install car guards in front of the area where patrons were required to stand, a question of material fact was raised as to the foreseeability of the plaintiff’s injury).
The Allans argue that Jefferson Lakeside can be held liable for the results of the uncle’s driving here because such erratic driving may reasonably be anticipated. On the contrary, it was not foreseeable that any driver on this access road would unintentionally accelerate from a full stop and cross a curb, a sidewalk, 14 feet up a slope, and 36 feet downward from the top of that slope before entering the lake at issue. Because Jefferson Lakeside could not be negligent as a matter of law for failing to foresee the events at issue here, *230 notwithstanding its failure to install a guardrail along the lake, the trial court did not err when it granted summary judgment to Jefferson Lakeside. Feldman, 121 Ga. App. at 580-581 (1) (affirming grant of motion to dismiss complaint of plaintiff injured by a car that drove into telephone booth adjacent to defendant’s store); Eckerd-Walton, 126 Ga. App. at 211-212 (2) (affirming grant of summary judgment to defendant drug store concerning plaintiff’s complaint for injuries suffered when car jumped curb and entered the store).
3. Because we affirm the trial court’s grant of summary judgment to Jefferson Lakeside on the ground that it owed no duty of care to foresee or take precautions to avoid the death of this decedent by installing a guardrail, the matter of the admissibility of Rice’s expert testimony is moot. We therefore dismiss Case No. A15A0247.

Judgment affirmed in Case No. Al 5A0246. Judgment reversed in Case No. A15A0479. Appeal dismissed in Case No. Al 5A0247.

Barnes, P. J., Ellington, P. J., Miller, Dillard and McFadden, JJ., concur. Andrews, P. J., concurs in part and dissents in part.

 In the first sentence of the argument section of its appellee’s brief in Case No. A15A0479, involving the dismissal of the Allans’ notice of appeal, Jefferson Lakeside states its belief that the underlying appeals “should be decided on their merits.” To do so would require reversing the trial court’s dismissal of the notice of appeal.

 The trial court’s order also consistently misnames the parties and their positions. After first stating that “the ultimate duty to ensure timely preparation and filing of a transcript falls with Defendant [rather than plaintiffs], not the Official Court Reporter,” the court repeated its error three more times: that “Defendant,” rather than plaintiffs, “failed to follow up” with the reporter; that “Defendant failed to seek appropriate relief from the Court”; and that “the delay [in filing the transcript] was unreasonable, inexcusable, and caused by Defendant” such that “Defendant’s notice of appeal is hereby dismissed.”

 Only Jefferson Lakeside’s reply briefs in support of its summary judgment motion and the exclusion of Rice’s testimony, and not its initial briefs, appear in the appellate record.