**FOURTH DIVISION
ELLINGTON, P. J.,
BRANCH and MERCIER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 26, 2016**

# In the Court of Appeals of Georgia

A16A0423. MURPHY v. FREEMAN et al.

MERCIER, Judge.

Nancy Murphy (Murphy) appeals the trial court's grant of summary judgment and its order barring the parties and their counsel from directly contacting the trial court's court reporter. Murphy argues that the trial court erred in granting Nan Freeman's motion for summary judgment because issues of material fact remained, and that the trial court's order barring either party from directly contacting its court reporter was in violation of numerous constitutional, and statutory rights. Finding no error, we affirm.

"A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences

drawn from it, in the light most favorable to the nonmovant." *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459, 459 (1) (486 SE2d 684) (1997) (citation omitted).

Viewed in this light, the record shows that this appeal arises out of a related child custody case filed against Murphy by her ex-husband ("John Murphy") in April 2012. *Murphy v. Murphy*, 328 Ga. App. 767 (759 SE2d 909) (2014). Judge Quillian Baldwin, the trial judge in the child custody case, ordered both parents to undergo a full custody evaluation. Id. Murphy appealed that order and refused to comply with the court's order for a custody evaluation, and a contempt order was entered against her. *Murphy v. Murphy*, 330 Ga. App. 169 (767 SE2d 789) (2014).

On April 1, 2014, Judge Baldwin ordered Murphy to submit to a psychological examination pursuant to OCGA § 9-11-35; the court had previously ordered such evaluations of both parents, but only John Murphy had complied. The order also specified that a compliance hearing would be scheduled for May 27, 2014. The court stated in its order that at the compliance hearing it would "consider[] the temporary custody of the children, if deemed necessary." At the compliance hearing on May 27, 2014, the trial court determined that Murphy had failed to undergo the court-ordered psychological examination pursuant to its April 1 order. Accordingly, the trial court

2

awarded temporary custody of the children to John Murphy at the May 27, 2014 hearing.

This appeal arises out of a lawsuit brought by Murphy against Nan Freeman, who was the court reporter at the May 27 compliance hearing and Freeman Reporting, Inc., her court reporting business. After he awarded temporary custody of the children to John Murphy, Judge Baldwin stated that the hearing was over, and he stood to leave the bench. Counsel for Murphy objected and requested a certificate of immediate review. Judge Baldwin denied the requests. Subsequently, Freeman provided the transcript of the May 27, 2014 hearing, but omitted the objection and request for certificate of immediate review that were made after Judge Baldwin said the hearing was over. Counsel for Murphy contacted Freeman, and requested that she supplement the transcript with the additional statements made. Freeman then prepared and filed an addendum to the trial transcript.

On the same date counsel for Murphy requested that Freeman supplement the trial transcript with an addendum, her counsel also sent Freeman an Open Records Act request seeking, inter alia, the audio recording of the May 27, 2014 hearing. Freeman refused to produce the audio recording on the grounds that the recording was both the work product and the personal property of the court reporter. On June

3

16, 2014, counsel for Murphy sent Freeman an email giving her notice of Murphy's intention to file a lawsuit if the audio recording was not made available. On June 18, 2014, Freeman agreed to provide a sealed copy for the court record and an unsealed copy to be placed in the clerk's office and made available for review by either party. Additionally, on June 19, 2014, Judge Baldwin sent an email to counsel for both parties informing them that Freeman would place an unsealed copy of the audio recording in the clerk's office that would be reviewable in the courthouse by both parties.

On June 20, 2014, counsel for Murphy sent an email to Judge Baldwin that, among other things, expressed counsel's dissatisfaction with Judge Baldwin's performance as a jurist, and the court's refusal to grant Murphy "unrestricted use" of the audio recording. On June 23, 2014, counsel for Murphy emailed Judge Baldwin and stated that he "need[ed] to know immediately if Nan Freeman is going to provide copies of the requested audio tapes, unrestricted, as I have a Complaint ready to be filed Tuesday if she is not." On June 25, Judge Baldwin responded by email that the audio recording would be made available in the clerk's office by June 27, 2014.

Despite the promised availability of the audio recording, on June 25, 2014 Murphy filed, in the Superior Court of Fulton County, a complaint against each

member of the Board of Court Reporting of the Judicial Council of Georgia (the Board), along with Nan Freeman and Freeman Reporting, Inc. The complaint alleged a wide variety of constitutional violations against all defendants. Although not mentioned in the complaint, on June 24, 2014, the Board had rejected a related grievance filed by Murphy against Freeman.

The Attorney General's Office represented the Board of Court Reporting and Murphy subsequently moved to dismiss the complaint as to the Board and its members. The Superior Court of Fulton County granted the motion. After the Fulton County defendants had been dismissed from the action, Freeman moved to dismiss the case or, in the alternative, to transfer the case to Troup County for lack of personal jurisdiction in Fulton County. The Fulton County court granted the motion and the case was transferred to Troup County.

Murphy's initial complaint against Freeman alleged various separate constitutional violations. First, Murphy alleged that Freeman's failure to produce the audio recording violated both the United States and Georgia constitutions. Next, her complaint alleged that Freeman's failure to provide to Murphy the recording of "one of the first temper tantrums of Judge Baldwin" deprived Murphy of her First Amendment right under the United States Constitution to "engage public opinion

5

against the illegal conduct of Judge Baldwin." Murphy further alleged statutory, equal protection, and due process violations, as well as a "first amendment protected right to have damages from Nan Freeman."

On March 19, 2015, Freeman moved for summary judgment on Murphy's constitutional claims, asserting the grounds of qualified immunity, lack of a private right of action, and mootness. On April 1, 2015, Murphy filed an amended complaint eliminating her constitutional claims and asserting new claims against Freeman. Murphy alleged that Freeman engaged in (1) fraud or negligent misrepresentation; (2) breach of contract; (3) conversion and unjust enrichment; and (4) negligence; and that Murphy should be awarded punitive damages. Additionally, Murphy filed over 300 pages of supplemental material in opposition to the motion for summary judgment.

At the hearing on the motion for summary judgment, Murphy declined to make an oral argument on the record. The trial court authorized both parties to file supplemental briefs, but Murphy elected not to do so. On July 14, 2015, the trial court entered summary judgment in favor of Freeman on all of the claims.

It subsequently came to the trial court's attention that counsel for Murphy had contacted the court reporter in the instant case (not Freeman) and requested a transcript as well as an audio recording of the summary judgment hearing. The trial

court conducted a conference call with both parties on July 17, 2015, and thereafter entered an order. The order stated that the court reporter would provide both parties with a copy of the transcript of the summary judgment hearing, that neither the parties nor their counsel were to contact the court reporter, and that requests for any transcript or audio recording, amendment or supplement to the record, would be made in accordance with OCGA § 5-6-41 et seq. This appeal followed.

1. As a threshold matter, we first address the glaring deficiencies in Murphy's appellate brief. "Any enumeration of error which is not supported in the brief by citation of authority or argument may be deemed abandoned." Court of Appeals Rule 25 (c) (2). See also *EZ Green Associates, LLC v. Georgia-Pacific Corp.*, 331 Ga. App. 183, 190 (3) (770 SE2d 273) (2015) (we need not address claim where appellant "did not develop a cogent argument or cite to any authority to support it[]"). In Murphy's brief, neither enumeration of error is supported by any pertinent citations to authority. The citations in the brief refer to cases that Murphy contends support her allegations of wrongdoing within the Coweta Judicial Circuit. However, none of the citations in her first enumeration of error points to any authority which would authorize us to reverse the Troup County trial court's grant of summary judgment, which is the judgment on appeal here. In fact, in the ten-page discussion of her first

7

enumeration of error, Murphy cites only four cases; one of the cases is a previous appeal in the underlying custody case, while another deals with the disqualification of a trial judge. The other two cases cited involve a trial judge's authority to rule on a separate motion in a case when that judge has to first rule on a motion to recuse. In sum, none of the case law cited by Murphy in the "Argument and Citation of Authorities" section of her brief is relevant to her appeal.

In her second enumeration of error, Murphy cites a single case, but fails to explain how it supports her argument. The case cited by Murphy is *Allan v. Jefferson Lakeside, L.P.*, 333 Ga. App. 222, 224 (1) (775 SE2d 763) (2015). In *Allan* we held that the failure to file a transcript before a 30-day filing deadline was not the fault of the appellant, and thus did not warrant dismissal of the appeal. Id at 225. In the instant case, the dismissal of an appeal for failure to timely file a transcript is not at issue. Murphy's reliance on *Allan* is misplaced and erroneous.

Murphy's brief features scant, unexplained citations to disparate cases that do not support her argument that the trial court erred when it granted summary judgment to Freeman. To characterize Murphy's brief as poorly supported by legal authority would be accurate, to characterize the brief as cogent would be an untruth.

8

Furthermore, "[e]ach enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of such reference, the Court will not search for or consider such enumeration." Court of Appeals Rule 25 (c) (2) (i). Murphy fails to support either of her enumerations of error with accurate citations to the record or transcript. Thus, not only are both enumerations of error unsupported by relevant case law, they are replete with citations to the record that are not only unhelpful to our determination, but are wholly irrelevant to Murphy's enumerations of error. Thus, these deficiencies render both of Murphy's enumerations of error abandoned. See Court of Appeals Rule 25 (c) (2) supra.

However, this Court feels compelled to point out that even if we did not deem her claims abandoned on these grounds, Murphy's brief also fails to state any grounds whatsoever on which we might find any merit in her appeal. Murphy's first enumeration of error is that the trial court erred by granting summary judgment to Freeman. However, Murphy fails to identify any genuine dispute of material fact that would merit reversal. Moreover, Murphy fails to identify the elements of the claims she asserted against Freeman, or what disputed facts would arguably create a triable issue. Thus, it is impossible for us to determine what facts might be material. Instead, she relies on nebulous statements about her right to a jury trial, and cites to affidavits

9

of her trial counsel. Generally, we have held that absent substantiating facts, self-serving and conclusory affidavits are insufficient to create genuine issues of material fact. See *J. Kinson Cook of Ga., Inc. v. Heery/Mitchell*, 284 Ga. App. 552, 559 (d) (644 SE2d 440) (2007). See also *Foster v. Ramsey*, 245 Ga. App. 118, 119 (1) (536 SE2d 550) (2000) (physical precedent only). Here, Murphy presented citations to self-serving conclusory affidavits by her counsel, with absolutely no substantiating facts. Thus, it was not error for the trial court to grant summary judgment to Freeman, and therefore we affirm the trial court's ruling.

Murphy's second enumeration of error is that the trial court erred in ordering the parties and their counsel not to contact the court reporter. Murphy fails to explain how she was harmed by this order, or what authority the trial court violated in giving such an order. Murphy relies on a single sentence in her brief that alleges she will be unable to obtain transcripts. However, the order does not prohibit her from obtaining transcripts; it merely prohibits direct contact with the court reporter, and requires all parties to comply with OCGA § 5-6-41 et seq. in requesting any portion of the record. Under OCGA § 5-6-41 (d), "Where matters occur which were not reported, such as objections to oral argument, misconduct of the jury, or other like instances, the court, upon motion of either party, shall require that a transcript of these matters be made

10

and included as a part of the record." While OCGA § 5-6-41 (f) provides: "Where any party contends that the transcript or record does not truly or fully disclose what transpired in the trial court and the parties are unable to agree thereon, the trial court shall set the matter down for a hearing with notice to both parties and resolve the difference so as to make the record conform to the truth." The trial court's order in no way prohibits Murphy from obtaining transcripts; it merely requires that appropriate motions be made and a hearing be held if any disagreement over the record might arise. Accordingly, the order prohibiting contact with the court reporter is affirmed.

2. Indeed, rather than providing this Court with cogent arguments supported by law and facts, Murphy and her counsel use Murphy's appellate brief as a platform to promulgate ad hominem attacks on various officers of the court with whom she takes issue, in direct violation of Court of Appeals Rule 10. In fact, the record in this case is near overflowing with direct violations of Rule 10. By way of example, Murphy's counsel accuses opposing counsel of illegally hand-picking Judge Baldwin to hear the underlying custody dispute; accuses Freeman of assisting Judge Baldwin in concealing his hand-selection of cases over which he wanted to preside; accuses Freeman of obtaining the assistance of Judge Baldwin in interfering with Murphy's

11

representation by counsel; accuses Judge Baldwin of advocating for Freeman, and of illegal conduct; accuses Judge Baldwin of violating the Code of judicial Conduct as well as further illegal activity; and accuses Judge Baldwin of being illegally selected by opposing counsel to preside over the custody dispute case (which is not the case at issue on appeal) after attending a political fundraiser. None of the allegations leveled by Murphy are supported by citations to the record or facts of any kind. And perhaps most telling and concerning to this Court, after numerous references to Judge Baldwin in Murphy's brief, Murphy's counsel states "The conduct of Judge Baldwin is not at issue in this appeal." This statement is true, and begs the question, why counsel for Murphy submitted such an extensive discussion about the alleged wrongdoing of Judge Baldwin if Murphy admits that his alleged conduct is irrelevant. It is worth noting again that Judge Baldwin was not the judge in the case giving rise to the appeal.

Given a second bite at the apple by way of a reply brief, Murphy's counsel continues his screed against Judge Baldwin and others. In Murphy's reply brief, Murphy's counsel accuses Freeman, Judge Baldwin, opposing counsel, and the entire Georgia Board of Court Reporting, of taking part in "Groupthink." Murphy's counsel defines Groupthink as occurring "when a group makes faulty decisions because group

pressures lead to a deterioration of 'mental efficiency, reality testing, and moral judgment.' Groups affected by groupthink ignore alternatives and tend to take irrational actions that dehumanize other groups."

To that end, Murphy's counsel accuses the 'groupthink' members of engaging in the following plot.

> Freeman's conduct was intended to benefit the judge-shopping, Groupthink parties, to the detriment of Michelle Murphy and the children. . . .[T]he Groupthink people who planned the take-down plot, had multiple deputy sheriffs waiting in the room near where the children were, and at least a half a dozen lawyers . . . ,who made the trip to Newnan to view the take-down that the Groupthink participants had planned.

Murphy's counsel also includes Judge Emory Palmer (the judge in the case giving rise to this appeal) in her accusations, alleging "Judge Emory Palmer, whose election was financed, in part, by John Murphy's Groupthink lawyers with their direct contributions, fundraising events and the bundlings of money, joined the Groupthink." All of the foregoing statements by Murphy and her counsel are completely unsubstantiated in the record, and are not even tangentially related to the issues on appeal.

13

Under Court of Appeals Rule 15, we may impose a penalty in cases where "the appellant could have no reasonable basis upon which to anticipate that this Court would reverse the trial court's judgment." *Hardwick v. Williams*, 272 Ga. App. 680, 683 (3) (613 SE2d 215) (2005). As we have detailed above, Murphy's arguments are not only meritless, but frivolous, and as they relate to the decisions of the trial court in Troup County, they are non-existent. Murphy could not have had a reasonable basis upon which to anticipate that we would reverse the trial court's judgment in this case. We conclude that Murphy appealed this case solely for the purpose of making meritless and public attacks on those individuals involved with this case with whom she disagrees. Our conclusion is evidenced by the failure of Murphy's counsel to make even the slightest attempt to use any relevant authority to argue in support of the enumerations of error she raised on appeal.

Furthermore, Court of Appeals Rule 10 is clear that "Personal remarks, whether oral or written, which are discourteous or disparaging to any judge, opposing counsel, or any court, are strictly forbidden." As outlined above, both Murphy's brief and reply brief contain numerous disparaging and discourteous personal remarks about opposing counsel, two different judges, the Coweta Judicial Circuit, in addition to Freeman, and the Georgia Board of Court Reporting. The fact that this is not the first

14

time Murphy and her counsel have been warned against and sanctioned for this type of conduct makes the violations even more egregious. In *Murphy*, this Court strongly warned and sanctioned Murphy and her counsel as follows:

> we recognize that cases arise where counsel must show that the issue is not merely error but misconduct. In such cases counsel should take particular care to summarize and cite the record accurately and to use a tone that is respectful and appropriate to the seriousness of the issues. Such care and respect are wholly absent from Nancy Michelle Murphy's brief.

See *Murphy*, 328 Ga. App. 767 at 774 (4). It is abundantly clear that Murphy and her counsel either did not read that opinion, or in the alternative, completely ignored it, either of which is repugnant to the Rules of the Court and potentially repugnant to the Rules of Professional Conduct. Not only does Murphy's brief contain numerous disparaging and discourteous comments about Judge Baldwin, the brief states clearly "[t]he conduct of Judge Baldwin is not at issue in this appeal." We are left to conclude that the disparaging remarks about Judge Baldwin and others that are wholly unsubstantiated by the record were included in Murphy's brief for no purpose other than to publicly criticize and spitefully belittle them, rather than obtain relief from this Court.

15

We will not countenance such behavior in any court of law in the State of Georgia. We do not and we will never "equate contempt with courage or insults with independence." *Sacher v. United States*, 343 U. S. 1, 14 (72 S Ct 451, 96 LE 2d 717) (1952). Notably, newly admitted members of the State Bar of Georgia are asked to swear a creed. In it, they swear to opposing counsel the following: "I offer fairness, integrity, and civility. I will seek reconciliation and, if we fail, I will strive to make our dispute a dignified one." State Bar Rules and Regulations, IX Professionalism, A Lawyer's Creed. In the same creed, they swear "I offer respect, candor, and courtesy" to the courts. Id.

We feel compelled to remind counsel that Rule 3.1 of the Georgia Rules of Professional Conduct prohibits a lawyer when representing a client from filing a suit, asserting a position, conducting a defense, delaying a trial, "or tak[ing] other action on behalf of the client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another." Rule 3.1 (a) of the Georgia Rules of Professional Conduct found in Bar Rule 4-102. We make no determination as to whether Farmer has violated Rule 3.1, but we would caution him that his conduct is at the very least pushing the limits of what is professionally acceptable.

16

Additionally, after both parties had filed their briefs Freeman filed a motion to dismiss the appeal as moot. Because we have decided the appeal on its merits we deny that motion. However, we note that the motion alleged that counsel for Murphy undertook this appeal in violation of Georgia Rule of Professional Conduct 1.2 (a). Such a question is not appropriately before us, and should only be addressed by the appropriate authorities.

We have already found that the briefs submitted by Murphy's counsel violated both Rule 25 and Rule 10 of this Court. Aggravating these violations is the fact that within the last two years Farmer has previously been cited by this Court for violations of these same rules. See *Murphy*, 330 Ga. App. 169, 172-173 (4); *Murphy*, 328 Ga. App. 767, 774 (4). We cannot find that such a pattern of conduct on the part of counsel for Murphy is inadvertent or misguided. Instead, we find that the repeated violations of our rules by Farmer are willful. Accordingly, under Court of Appeals Rule 15, Millard Farmer, counsel for Murphy, shall pay a penalty of $2,500. The penalty shall constitute a money judgment in favor of Freeman against Farmer, and the trial court is directed to enter judgment in such amount upon return of the remittitur in this case. Court of Appeals Rule 15 (c). We would also note that this is Mr. Farmer's third sanction for this type of conduct before the Court. Any further

17

filings of the same type of conduct thus far exhibited could result in further and harsher sanction by this Court.

*Judgment affirmed. Ellington, P. J., and Branch, J., concur*.