NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: February 20, 2024

S23G0263. PREMIER PEDIATRIC PROVIDERS, LLC v. KENNE-SAW PEDIATRICS, P.C.

PINSON, Justice.

Kennesaw Pediatrics, P.C. sued Premier Pediatric Providers, LLC and won summary judgment. Premier appealed, which meant it then had 30 days to have the hearing transcript prepared and filed as part of the record on appeal. Premier did not do so. Months later, Kennesaw Pediatrics moved to dismiss the appeal under OCGA § 5-6-48 (c), arguing that the delay in filing the transcript was unreasonable, inexcusable, and caused by Premier. Premier then realized its mistake and had the transcript filed within days.

To counter Kennesaw Pediatrics's motion to dismiss, Premier explained that it had believed the transcript was filed a few days

after the notice of appeal and presented evidence in support. Hearing that evidence, the trial court found the delay was not inexcusable and denied Kennesaw Pediatrics's motion to dismiss. But on appeal, the Court of Appeals concluded that the trial court had abused its discretion, reversed the trial court's order, and dismissed the appeal.

We granted review to clarify the standard for appellate review of a trial court's decision whether to dismiss an appeal under OCGA § 5-6-48 (c), both as to the predicate findings and the ultimate decision whether to dismiss, and to consider whether the Court of Appeals properly applied that statute in this case.

We now vacate in part and reverse in part the Court of Appeals' decision. The Court of Appeals was right that the trial court's order was subject to review for abuse of discretion, a standard that applied both to the trial court's predicate findings and its ultimate decision to deny the motion. But under that standard, the trial court did not abuse its discretion in denying Kennesaw Pediatrics's motion to dismiss, for the reasons we set out below. Finally, an appellate court

may not dismiss an appeal challenged under OCGA § 5-6-48 (c) (as the Court of Appeals did here), and it is generally not proper even to direct the trial court to do so. That statute expressly prohibits an appellate court from dismissing an appeal based on the failure to timely file the transcript, and it gives the trial court discretion as to the ultimate question whether to dismiss an appeal.

1. Kennesaw Pediatrics sued Premier for the right to inspect Premier's business records. On July 20, 2021, the court granted summary judgment in favor of Kennesaw Pediatrics.

Premier filed a timely notice of appeal on August 2, 2021. Premier's notice of appeal specified that "[t]ranscripts of evidence and proceedings for the hearing held on Petitioner's and Respondent's cross Motions for Summary Judgment, held on July 19, 2021, should be filed for inclusion in the record on appeal." By statute, Premier then had 30 days, or until September 1, 2021, to have the transcript filed with the Court of Appeals as part of the record on appeal. See OCGA § 5-6-42 ("[t]he party having the responsibility of filing the transcript shall cause it to be filed within 30 days after

3

filing of the notice of appeal").

Over four months later, on December 16, 2021, Kennesaw Pediatrics moved to dismiss Premier's appeal under OCGA § 5-6-48 (c). That statute allows a trial court to dismiss an appeal "where there has been an unreasonable delay in the filing of the transcript and it is shown that the delay was inexcusable and was caused by [the party responsible for filing the transcript]." Kennesaw Pediatrics noted that the transcript from the summary judgment hearing had not yet been filed with the Court of Appeals. Kennesaw Pediatrics argued that this delay was both unreasonable and inexcusable and that it was caused by Premier's failure to order and pay for a transcript.

Premier opposed the motion to dismiss. The opposition included an affidavit from Premier's counsel, Roger E. Harris, which explained why the transcript had not been filed. According to the affidavit, on the day after the notice of appeal was filed, Harris's firm received an invoice from the clerk of superior court for all costs associated with the record on appeal. The invoice included a $35.00

"Transcript Charge" as well as a line item for $1,562.00, representing 1,562 "pages in record" at a cost of a dollar per page. Harris's firm promptly paid the invoice, and Harris assumed that meant that the transcript had been included in the record on appeal. As he explained in his affidavit: "Given that the only oral argument or in-court proceeding in the entire case was on the Parties' cross Motions for Summary Judgment, I reasonably understood that the line item charge for $35.00 for the 'Transcript' represented the only transcript relating to this case, specifically for oral argument on those motions."

Harris realized he may have been mistaken only when Kennesaw Pediatrics moved to dismiss the appeal under OCGA § 5-6-48 (c). At that time, he contacted the clerk of superior court to investigate, and learned for the first time that the transcript had never been filed. Harris immediately arranged for the transcript to be prepared and filed with the Court of Appeals. His firm received confirmation from the court reporter that the transcript would be filed no later than noon on December 20, 2021—five days after Kennesaw

5

Pediatrics filed its motion to dismiss. Premier argued that under these circumstances the delay in filing the transcript was neither unreasonable nor inexcusable, and that its appeal should therefore not be dismissed.

The trial court agreed with Premier and denied Kennesaw Pediatrics's motion to dismiss. Recounting the facts in Harris's affidavit, the trial court found that, "after notice of the misunderstanding of 'transcript charges,' Defendant was diligent in its efforts to have the record prepared to be transmitted to the Court of Appeals." The court found that the delay was therefore not unreasonable or inexcusable.

Kennesaw Pediatrics's appeal of the order denying its motion to dismiss (Case No. A22A0924) was consolidated with Premier's underlying appeal of the summary judgment order.[1] In the consolidated opinion, the Court of Appeals reversed the denial of the motion

---

[1] To be clear about the procedural posture: there are two appeals in this case. First, Premier appealed the trial court's summary judgment order. We refer to that appeal as Case No. A22A0857 or the "merits appeal." Then Kennesaw Pediatrics moved to dismiss the merits appeal, the trial court denied that

6

to dismiss. The court concluded that Premier's delay in filing the transcript was both unreasonable and inexcusable, and that the trial court thus abused its discretion in finding otherwise and in denying the motion to dismiss Premier's appeal. *Premier Pediatric Providers, LLC v. Kennesaw Pediatrics, P.C.*, 365 Ga. App. 351, 354 (1), 358 (1) (b) (878 SE2d 588) (2022).

As to excuse—the main question here—the Court of Appeals explained that the delay was "prima facie inexcusable" because it was Premier's responsibility to have the transcript prepared. Id. at 355 (1) (b). It was therefore up to Premier to "come forth with evidence to rebut the presumption that the delay was inexcusable." Id. But the court concluded that Premier had not done that. Id.

The Court of Appeals reasoned that it was not proper for Premier to shift the blame to the clerk of court for not filing the transcript. Id. at 357 (1) (b). The court compared this case to two others in which, as here, the appellant mistakenly believed a transcript was

motion, and Kennesaw Pediatrics appealed *that* order. Kennesaw Pediatrics's appeal of the motion-to-dismiss order, Case No. A22A0924, is our focus here.

filed based on a line item in a clerk of court's invoice. In one of those cases, *Northeast Georgia Medical Center v. HealthSouth Rehabilitation Hospital of Forsyth County*, 347 Ga. App. 852 (821 SE2d 68) (2018), the Court of Appeals had concluded that the line item did not excuse the appellant's failure to monitor the status of its appeal. See *Premier Pediatric Providers*, 365 Ga. App. at 356-357 (1) (b) (citing *Ne. Ga. Med. Ctr.*, 347 Ga. App. at 857-860 (1), (2)). In the other, earlier case, *Allan v. Jefferson Lakeside, L.P.*, 333 Ga. App. 222 (775 SE2d 763) (2015), the Court of Appeals reached the opposite conclusion. See *Premier Pediatric Providers*, 365 Ga. App. at 356 (1) (b). But the court here explained that in *Allan*, the appellant had shown that it "actively pursued the timely preparation and filing of the transcript by ordering it, inquiring as to the cost of its preparation, and by repeatedly following up with the clerk concerning the status of the transcript prior to the 30-day deadline for filing." Id. (citing *Allan*, 333 Ga. App. at 224-225 (1)). Here, according to the Court of Appeals, Premier made no such showing. So the court reasoned that this case was more like *Northeast Georgia Medical Center*, and that

*Allan* was distinguishable. See *Premier Pediatric Providers*, 365 Ga. App. at 356-357 (1) (b).

The Court of Appeals also concluded that the trial court abused its discretion by focusing only on Premier's diligence *after* Kennesaw Pediatrics filed its motion to dismiss. See id. at 357 (1) (b). The court explained: "[W]e cannot ignore our precedent establishing Premier's duty to ensure timely filing of the transcript *at* the time of filing its notice of appeal, *before* the 30-day deadline for filing, and *during* the ensuing nearly four-month period before Kennesaw [Pediatrics] filed its motion to dismiss the appeal." Id. at 357-358 (1) (b).

Having concluded that the trial court abused its discretion, the Court of Appeals reversed the order denying the motion to dismiss, and then it dismissed Premier's appeal. Id. at 358 (1) (b). We granted review.

2. Code Section 5-6-48 (c) says that a trial court "may" dismiss an appeal "where there has been an unreasonable delay in the filing of the transcript and it is shown that the delay was inexcusable and

was caused by" the party responsible for filing the transcript.[2] With that language, the statute calls for the trial court to make up to two decisions. First, the trial court must determine whether a delay in filing the transcript was "unreasonable," "inexcusable," and "caused by" the party responsible for filing the transcript (usually the appellant). If so, the trial court must then decide whether to dismiss the appeal. See *Propst v. Morgan,* 288 Ga. 862, 863 (708 SE2d 291) (2011) ("OCGA § 5-6-48 (c) requires the trial court to determine the length of the delay, the reasons for the delay, whether the appealing party caused the delay, and whether the delay was inexcusable, and then to exercise discretion in deciding whether to dismiss the appeal.").

The trial court's decision whether to dismiss an appeal under

---

[2] The relevant portion of OCGA § 5-6-48 (c) provides:

No appeal shall be dismissed by the appellate court nor consideration of any error therein refused because of failure of any party to cause the transcript of evidence and proceedings to be filed within the time allowed by law or order of court; but the trial court may, after notice and opportunity for hearing, order that the appeal be dismissed where there has been an unreasonable delay in the filing of the transcript and it is shown that the delay was inexcusable and was caused by such party.

OCGA § 5-6-48 (c) is appealable. All agree, and our precedent holds, that the trial court's ultimate decision whether to dismiss the appeal is reviewed for abuse of discretion. See *Propst*, 288 Ga. at 863. The parties also agree, at least on the surface, that the trial court's predicate findings under OCGA § 5-6-48 (c)—that is, the court's findings whether a delay in filing the transcript was "unreasonable," "inexcusable," and "caused by" the responsible party—are reviewed for abuse of discretion. That is what our precedent says, too. See *Kelly v. Dawson County*, 282 Ga. 189, 189 (646 SE2d 53) (2007) ("In reviewing a finding of unreasonable and inexcusable delay in filing a transcript, an appellate court will not disturb the lower court's finding absent an abuse of discretion." (cleaned up)); *Durden v. Griffin*, 270 Ga. 293, 294 (1) (509 SE2d 54) (1998) (trial court's decision under the statute "must be affirmed, absent an abuse of discretion"); *Sellers v. Nodvin*, 262 Ga. 205, 206 (1) (a) (415 SE2d 908) (1992) (the trial court's "passing upon the[ ] issues" of whether a delay was unreasonable and inexcusable is reviewed for abuse of discretion) (citation and punctuation omitted). Generally, that means the trial

11

court's conclusions will be affirmed so long as they are "in conformity with the governing legal principles," *Ford Motor Co. v. Conley*, 294 Ga. 530, 538 (2) (757 SE2d 20) (2014), based on "correct facts" that are "relevant to determining whether [any] legal requirements [are] satisfied," id. (citation and punctuation omitted), and within the "range" of possible outcomes "in which there could be room for reasonable and experienced minds to differ," *Greyling Realty Corp. v. Lawson*, 179 Ga. 188, 193 (175 SE 453) (1934).

Kennesaw Pediatrics, however, advances a novel take on what review for abuse of discretion means in this context. It says that the "'basic' or 'historical' factual findings" that underpin the predicate findings are reviewed for clear error, but the court's "actual determinations" about "whether those facts amounted to a delay that was unreasonable, inexcusable, and caused by the appealing party" are reviewed de novo "with no deference to the trial court's findings." Put another way, Kennesaw Pediatrics contends that if there is no dispute about what happened—i.e., the historical facts—an appellate court's "abuse of discretion" review of the predicate findings is

12

really just de novo review.

That view is mistaken. As both parties acknowledge, the predicate findings themselves are "mixed" findings: deciding whether a given delay is "unreasonable," or "inexcusable," or "caused by" the appellant requires a court to make a "nuanced judgment whether given historical facts meet or add up to an abstract legal concept or standard." *Efficiency Lodge, Inc. v. Neason*, 316 Ga. 551, 565 (2) (b) (ii) n.6 (889 SE2d 789) (2023). And we have consistently held that the mixed findings that a trial court makes under OCGA § 5-6-48 (c) are committed to the trial court's discretion, and so are reviewed on appeal only for abuse of that discretion. See *Kelly*, 282 Ga. at 189; *Sellers*, 262 Ga. at 206 (1) (a). As with any mixed findings, to make these predicate findings a trial court will have to make factual findings or rely on undisputed facts (or a combination) about "what happened in the real world," see *Efficiency Lodge*, 316 Ga. at 565 (2) (b) (ii) n.6—for example, what steps the appellant took or did not take to get the transcript filed, how quickly it took those steps, and the date the transcript was filed. But whether those historical facts

13

come from undisputed evidence or from the trial court's findings about disputed facts, the nature of the trial court's task in making the mixed findings is the same: deciding whether those historical facts add up to an "unreasonable" and "inexcusable" delay that is "caused by" the responsible party. See OCGA § 5-6-48 (c). Either way, that inquiry remains a mixed question that is committed to the trial court's discretion, and so the court's predicate findings are still reviewable only for abuse of that discretion.[3]

Review for abuse of discretion makes good sense for the predicate findings a trial court makes under OCGA § 5-6-48 (c). As with many mixed questions involving the conduct of litigants during trial proceedings, the trial court is generally in the better position to resolve questions about the nature of and fault for the delay in filing a transcript, having had "the opportunity to observe and assess the

---

[3] This is not to say that all mixed findings are reviewed for abuse of discretion. For instance, a "mixed question of constitutional law," even if "fact-intensive," generally calls for de novo review. *Efficiency Lodge,* 316 Ga. at 565 (2) (b) (ii) n.6 (quoting *Lilly v. Virginia,* 527 U.S. 116, 136-137 (V) (119 SCt, 1887, 144 LE2d 117) (1999) (reasoning that for "fact-intensive, mixed questions of constitutional law, independent review is necessary to maintain control of, and to clarify . . . the legal principles governing the factual circumstances necessary to satisfy the protections of the Bill of Rights" (cleaned up))).

conduct, demeanor, and credibility of the parties and their counsel throughout the proceedings." *Resurgens, P.C. v. Elliott*, 301 Ga. 589, 598 (2) (b) (800 SE2d 580) (2017) (citation and punctuation omitted). See also, e.g., *Gen. Motors, LLC v. Buchanan*, 313 Ga. 811, 815 (2) (a) (874 SE2d 52) (2022) (decision to issue a protective order reviewed for abuse of discretion); *Resurgens*, 301 Ga. at 597-598 (2) (b) (decision to impose discovery sanctions reviewed for abuse of discretion); *Horn v. Shepherd*, 292 Ga. 14, 17-18 (4) (732 SE2d 427) (2012) (decision to find a party in contempt reviewed for abuse of discretion); *Sanders v. Am. Liberty Ins. Co.*, 225 Ga. 796, 796-797 (171 SE2d 539) (1969) (trial courts "may exercise a sound and legal discretion" when deciding whether to open default (citation and punctuation omitted)). As with those questions, the trial court is the court best suited to weigh a party's conduct, the status of the litigation, and other matters relevant to whether the responsible party has acted unreasonably and inexcusably in failing to file a transcript before the statutory deadline.

So, when a litigant appeals a trial court's dismissal decision

under OCGA § 5-6-48 (c) and challenges the trial court's predicate findings—whether a delay was unreasonable, inexcusable, and caused by the appellant—an appellate court reviews those findings for abuse of discretion. Of course, a litigant can mount that challenge by attacking conclusions of law (for example, what period of time the law sets for filing a transcript) or findings of fact (for example, what steps the appellant took to get the transcript filed) that are made along the way to the predicate findings. Those subsidiary legal conclusions and factual findings are reviewed on appeal de novo and for clear error respectively, see, e.g., *Charles v. State*, 315 Ga. 651, 657 (3) (884 SE2d 363) (2023) (explaining that while a trial court's "ultimate decision" whether to grant a motion for mistrial is reviewed for abuse of discretion, the factual findings or credibility determinations underlying the court's decision are reviewed for clear error); *Ford Motor Co.*, 294 Ga. at 538 (2) (same for extraordinary motions for new trial), and if error is found in reviewing those conclusions and findings, that informs the ultimate judgment whether the trial court abused its discretion in making the predicate findings, see *Rockdale*

16

*Hosp., LLC v, Evans*, 306 Ga. 847, 851 (2) (b) (834 SE2d 77) (2019) ("A trial court abuses its discretion when the exercise of discretion was infected by a significant legal error or a clear error as to a material factual finding."); *State v. Porter*, 288 Ga. 524, 526 (2) (a) (705 SE2d 636) (2011) (deference owed to trial court in abuse-of-discretion review is "diminished" if the trial court "has clearly erred in some of its findings of fact and/or has misapplied the law to some degree" (citation and punctuation omitted)). For example, if the record shows that the trial court clearly got the date of the transcript filing wrong—a clearly erroneous finding of fact—and that, under the *correct* filing date, the delay was presumptively unreasonable, that could support the conclusion that the trial court abused its discretion in finding that the delay was not unreasonable. See *Rockdale Hosp.*, 306 Ga. at 851 (2) (b); *Ford Motor Co.*, 294 Ga. at 538 (2). But the mixed findings a trial court makes under OCGA § 5-6-48 (c)— both the predicate findings and the ultimate decision whether to dismiss an appeal—remain subject to review for abuse of discretion. So those findings will generally not be disturbed as long as they are

17

within the bounds of the law, based on "correct," "relevant" facts, and within the range in which reasonable jurists could disagree. See *Ford Motor Co.*, 294 Ga. at 538 (2) (citation and punctuation omitted); *Greyling Realty Corp.*, 179 Ga. at 193.

3. Applying that standard of review here, we see no basis for concluding that the trial court abused its discretion in concluding that the delay here was not "inexcusable." The trial court did not rely on any incorrect facts or misunderstandings of the law. The sequence of events was not disputed: on August 2, Premier filed its notice of appeal; on August 3, Premier got an invoice from the clerk of court that included a "transcript charge" and a line item for "pages in record"; on December 16, Kennesaw Pediatrics moved to dismiss the appeal; and by December 20, Premier had caused the transcript to be filed. Along with those facts, the trial court credited Premier's explanation that the "transcript charge" in the invoice made Premier think the transcript was already filed by August 3 and that it did not know otherwise until December 16. Those credibility determinations were the trial court's to make and were not clearly erroneous.

See *Charles*, 315 Ga. at 657 (3) (credibility determinations that fall within trial court's discretion are reviewed for clear error). Together, those facts and credibility determinations were obviously "those relevant to determining whether" Premier's delay in filing the transcript was inexcusable.[4] See *Ford Motor Co.*, 294 Ga. at 538 (2). And the trial court, relying on those facts, exercised its discretion to conclude that, under the "governing legal principles," see id., Premier's explanation was a sufficient excuse.

In concluding that the trial court abused its discretion in concluding that the delay was not "inexcusable," the Court of Appeals relied primarily on two prior Court of Appeals opinions, *Allan* and *Northeast Georgia Medical Center*, which involved similar but slightly distinguishable facts and came out on opposite sides of the

---

[4] The Court of Appeals reasoned that the trial court "failed to consider" Premier's actions before Kennesaw Pediatrics's motion to dismiss. See *Premier Pediatric Providers*, 365 Ga. App. at 357-358 (1) (b). But as we noted above, the trial court laid out the sequence of events in its order. And it pointed out that Premier "alleges it had no reason to suspect that the transcript had not been filed given the reference to the $35.00 transcript charges on the Cost Bill." So it is clear that the court took into account *why* Premier did not act until receiving the motion to dismiss. And as discussed above, the court found that the excuse Premier gave was good enough to conclude that the delay was not "inexcusable."

dismissal question. The Court of Appeals reasoned that this case was more like *Northeast Georgia Medical Center*, where the Court of Appeals held that the trial court did not abuse its discretion in dismissing the appeal, and so it concluded that the trial court abused its discretion by not dismissing the appeal under similar circumstances here. See *Premier Pediatric Providers*, 365 Ga. App. at 356-358 (1) (b).

We disagree. To begin with, the facts of *Northeast Georgia Medical Center* are not so different from those of *Allan*, and reasonable minds could differ as to which set of facts is more similar to this case.[5] But even if *Northeast Georgia Medical Center* were the closer

---

[5] In *Northeast Georgia Medical Center*, counsel received an invoice which suggested the transcript had been filed. See *Ne. Ga. Med. Ctr.*, 347 Ga. App. at 854-855. Relying on that invoice, counsel did not ask the clerk of court about the transcript until 57 days after filing the notice of appeal. See id. And when counsel learned the transcript had not been filed, counsel waited another month before checking in again. See id. In *Allan*, by contrast, counsel was in contact with the clerk of court about the transcript right after filing the notice of appeal, but a few weeks later, when counsel got an invoice suggesting the transcript was filed, counsel relied on that invoice and did nothing for several months. See *Allan*, 333 Ga. App. at 224-225 (1). Then, when counsel learned the transcript had not been filed, counsel acted promptly. See id. at 232 (Andrews, P.J., concurring) (noting that counsel caused the transcript to be filed

comparator, that would not demand the conclusion that the trial court abused its discretion here. In *Northeast Georgia Medical Center*, unlike here, the trial court had *granted* the motion to dismiss after concluding that the appellant's delay was unreasonable, inexcusable, and caused by the appellant, see *Ne. Ga. Med. Ctr.*, 347 Ga. App. at 855, and the Court of Appeals held merely that the trial court's dismissal and a challenged predicate finding were *not* an abuse of discretion. See id. at 857-858 (1) (trial court did not abuse its discretion in finding the delay unreasonable); id at 860 (2) ("[t]he trial court did not abuse its discretion in finding the delay inexcusable"). That holding does not mean that the trial court necessarily *would* have abused its discretion had it declined to dismiss the ap-

---

the same day the appellee moved to dismiss the appeal). Here, Premier received a misleading invoice soon after filing its notice of appeal (like in *Northeast Georgia Medical Center*) and as a result did not contact the clerk of court to inquire about the transcript (like in *Northeast Georgia Medical Center*), but when Premier learned the transcript had not been filed, it acted promptly (like in *Allan*). It was within the trial court's discretion to determine that the way in which this case is like *Allan*—the appellant acting promptly as soon as it knew the transcript was not filed—rendered the appellant's conduct excusable.

peal or determined that the delay was excusable under those circumstances. Indeed, that is the whole point of the abuse-of-discretion standard: when questions are committed to a trial court's discretion, the court is afforded substantial deference that allows for a range of permissible outcomes, see *Kelly*, 282 Ga. at 189, as long as that discretionary decision is based on a correct understanding of the law and facts. See *Rockdale Hosp.*, 306 Ga. at 851 (2) (b). In other words, it may well have been within the court's discretion in *Northeast Georgia Medical Center* to conclude that the delay was reasonable and excusable, or not, and to dismiss the appeal, or not. Simply put, a holding that a trial court's decision was *not* an abuse of its discretion under particular circumstances does not stand for the proposition that the opposite decision *would* be an abuse of discretion. So here, even assuming the facts of *Northeast Georgia Medical Center* are materially similar to the facts of this case, its holding that the trial court did not abuse its discretion in dismissing that appeal is at most persuasive authority: it does not control the question

22

whether the trial court abused its discretion in finding the delay excusable and not dismissing the appeal in this case.

Finally, in connection with dismissal decisions under OCGA § 5-6-48 (c), we note the legislature's direction that the Appellate Practice Act is to be "liberally construed so as to bring about a decision on the merits of every case appealed and to avoid dismissal of any case or refusal to consider any points raised therein." OCGA § 5-6-30. In other words, OCGA § 5-6-30 puts a legislative thumb on the scale in favor of reaching the merits. See also, e.g., *Felix v. State*, 271 Ga. 534, 534-535 (523 SE2d 1) (1999) (the Appellate Practice Act was passed to "simplify the procedure for bringing a case to the appellate court," not to "set traps and pitfalls by way of technicalities for unwary litigants," and was intended to "get away from the harsh practice of treating every minor departure from prescribed procedures as a jurisdictional defect on the same level as a violation of the Bill of Rights" (cleaned up)). This direction from the legislature necessarily informs the discretionary decision of a trial court under OCGA § 5-6-48 (c) to dismiss an appeal, and it adds support to the

trial court's decision here to allow the appeal of this case to proceed to a decision on its merits.

In sum, the trial court did not abuse its discretion in concluding Premier's delay in filing the transcript was not inexcusable and denying Kennesaw Pediatrics's motion to dismiss, and the Court of Appeals' opinion holding otherwise is reversed.

4. Because the trial court did not abuse its discretion in declining to dismiss the appeal in this case, we need not resolve our question about the proper disposition in the appellate court when a trial court does abuse its discretion. But two points of law are worth noting here. First, the statute makes plain (and the parties agree) that an appellate court may not dismiss an appeal under OCGA § 5-6-48 (c) as the Court of Appeals did here. See OCGA § 5-6-48 (c) (stating that "[n]o appeal shall be dismissed by the appellate court nor consideration of any error therein refused" because any party has failed to timely cause the transcript to be filed). Second, it is generally not appropriate for the appellate court even to direct the trial court to

24

dismiss the appeal if it determines that a trial court abused its discretion in finding that the delay was reasonable, excusable, or not caused by the appellant. As we explained above, even if a trial court makes all the predicate findings necessary for dismissal under the statute—that the delay in filing the transcript was unreasonable, inexcusable, and the fault of the appellant—the statute does not *require* dismissal. See id. (providing the trial court "*may*, after notice and opportunity for hearing, order that the appeal be dismissed" when the predicate findings are satisfied) (emphasis added). Instead, the trial court still must "exercise discretion in deciding whether to dismiss the appeal." *Propst*, 288 Ga. at 863. See also *Jackson v. Sanders*, 299 Ga. 332, 335 (788 SE2d 387) (2016) ("may" is permissive). So here, even if the Court of Appeals had been right that the trial court abused its discretion in finding that the delay was excusable, the proper course would have been to reverse that finding and then remand for the trial court to reconsider the ultimate question of dismissal consistent with the Court of Appeals' opinion.

\*

For the reasons set out above, we reverse the Court of Appeals' decision in Case No. A22A0924, which reversed the denial of Kennesaw Pediatrics's motion to dismiss, and we vacate the Court of Appeals' order in Case No. A22A0857, which dismissed Premier's appeal. The case is remanded to the Court of Appeals for further proceedings consistent with this opinion.

*Judgment vacated in part and reversed in part and case remanded with direction. All the Justices concur, except Boggs, C.J., not participating.*